BATCHELDER, C.J., delivered the opinion of the court, in which COOK, J., joined, and WHITE, J., joined in part. WHITE, J. (pp. 545-51), delivered a separate opinion dissenting from Part III of the majority opinion.
AMENDED OPINION
In 1992, a Tennessee jury convicted Petitioner-Appellant Henry Hodges of first-degree murder and sentenced him to death. The state courts upheld the conviction and sentence on appeal and denied Hodges’s petition for post-conviction relief. Hodges then petitioned for federal habeas relief, which the district court denied. Hodges now appeals that denial to this court. For the following reasons, we AFFIRM the district court’s denial of Hodges’s habeas petition.
FACTS
The Tennessee Supreme Court summarized the facts of this case as follows:
The defendant, Henry Eugene Hodges, entered a guilty plea and was convicted of premeditated first-degree murder. Thereafter, the penalty phase of the trial commenced. The State presented proof of the circumstances of the offense through the testimony of Trina Brown, the defendant’s fifteen-year-old girlfriend. Brown testified that one week before the murder she and the twenty-four-year-old defendant, who were living with the defendant’s brother in Smyrna, Tennessee, decided to move to Florida. To get money for the move, Hodges, a male homosexual prostitute, told Brown that he would rob and kill the next person who propositioned him. Hodges discussed with Brown how the crimes would be carried out. Hodges repeated these statements on May 14, 1990, the day of this murder.
On the night of May 14, Brown and Hodges went to Centennial Park in Nashville. When the victim, Ronald Bassett, approached, Hodges talked with him, and they left together in the victim’s vehicle and went to the victim’s residence at 3133A, Parthenon Avenue, across from Centennial Park. Ten or fifteen minutes later, Hodges returned to the park on foot, and along with Brown, drove back to the victim’s residence in his own car. Hodges told Brown to lie down in the backseat of the car so no one could see her. When they arrived at the victim’s residence, Hodges told Brown to wait in the car. After an unspecified period of time, Hodges returned to the car, wearing gloves, and asked Brown to come into the house. Brown testified that when she arrived, Bassett was lying face down on the bed in his bedroom with a pillow over his *523 head. Hodges had bound his feet together with duct tape and had handcuffed his hands. While Bassett lay helplessly, Brown and the .defendant ransacked the house searching for items of value. After obtaining the personal identification number for the victim’s automatic teller card, Brown and the defendant “took a break,” drank a coke, and discussed whether to kill Bassett. Brown testified that she told Hodges to kill Bassett to prevent their arrest. Hodges then went into the bedroom and, ignoring the victim’s pleas not to kill him, strangled Bassett to death with a nylon rope. Brown testified that she heard Bassett moan and make a choking sound and that it took about five minutes for Bassett to die.
In an attempt to remove any fingerprints, the defendant wiped off various items in the residence. After turning the air conditioner in Bassett’s bedroom on high to prevent discovery of the body, Hodges and Brown left the victim’s residence, taking the victim’s automobile and several items of personal property, including jewelry, a gun, and a VCR. After using Bassett’s automatic teller card to withdraw the twenty-four-hour maximum of four hundred dollars from his account, the pair returned to the house of the defendant’s brother and went to bed. The next day, having learned that the victim’s body had been discovered, Brown and the defendant abandoned the victim’s car in rural Rutherford County and drove to Georgia in their own car. They were eventually arrested in North Carolina. Items of the victim’s personal property were found in their possession at this time. Also, the defendant’s fingerprints were found on items inside Bassett’s home, and Brown had been photographed withdrawing money with Bassett’s automatic teller card.
Testifying for the State at the sentencing hearing, Dr. Charles Harlan, the chief medical examiner for Metropolitan Nashville and Davidson County, confirmed that Bassett had died from ligature strangulation. Dr. Harlan opined that Bassett would have remained alive and conscious for at least three and perhaps as long as five minutes during the strangulation. Harlan also found abrasions on the victim’s wrists consistent with handcuffs.
The State proved that the defendant had been convicted of armed robbery, attempted kidnaping and robbery in Hamilton County in 1984. The State also established that the defendant had been convicted of murder in Fulton County, Georgia, in July 1990. The record reveals that the Georgia killing occurred when the defendant and Brown arrived in Atlanta after murdering Bassett. Hodges made arrangements with a man to engage in homosexual acts for an agreed price. Hodges accompanied the man to his motel room, but when the man was unable to pay the agreed price, Hodges murdered him. .
In mitigation, the defendant testified and also presented the testimony of his mother, his brothers and Dr. Barry Nurcombe, a. child psychiatrist. This proof showed that the defendant was the next to youngest of his mother’s five sons. His mother and father were not married. His father was actually married to another woman, but engaged in what one of the witnesses described as .an “irregular union” with the defendant’s mother for eighteen years. The defendant’s father abused the defendant’s mother and was strict with the defendant’s brothers, three of whom were the children of another man. The defendant, however, was his father’s favorite and was spoiled. Financial diffi *524 culties forced the family to move about frequently, and defendant’s father supported the family, only sporadically.
The defense introduced proof to show that Hodges seemed normal until he was twelve years old. At that time, he began to associate with older boys, sniff glue and gasoline, be truant from school, and run away from home. He also engaged in sexual activities with his younger brother and attempted sexual activities with a female cousin. He became involved with the juvenile authorities and was confined to a juvenile facility in Chattanooga.
Through his mitigation proof, the defendant attempted to establish that a catalyst and major contributing cause of his delinquent and later criminal behavior was his rape and sexual abuse by a stranger when he was twelve years old. According to the defendant, he accepted a stranger’s offer of a ride home when he was playing a short distance from his home on Fessler’s Lane in Nashville. Rather than driving Hodges home, the stranger drove Hodges to his home and raped him. Fearing rejection by his homophobic father and driven by guilt, the defendant told no one of this incident until he was arrested in 1990.
Dr. Nurcombe testified that, while the defendant suffered from an antisocial personality disorder, low self-esteem, and substance (marijuana) abuse, the killing was motivated by a subconscious desire for revenge for the sexual abuse inflicted on him when he was twelve, coupled with Hodges’ fear that his family might discover that he was engaged in homosexual prostitution since Brown had told Hodge’s [sic] sister-in-law shortly before the killing that he was a homosexual prostitute. The defense also introduced testimony that Brown dominated and manipulated the defendant.
In rebuttal the State called Dr. James Kyser, a forensic psychiatrist, and Dr. Leonard Morgan, a clinical psychologist. Both had examined the defendant and concluded that he suffered from an antisocial personality disorder. They described persons with this disorder as having “no conscience,” being “self centered,” being “notoriously dishonest and untruthful,” and having “very little regard for the feelings of others and ... willing to use any means to get what they want, no matter who it hurts.” While acknowledging the complicated factors involved in antisocial personality disorders, the State’s experts discounted the singular importance of the one incident of alleged sexual abuse in causing the defendant’s actions. Dr. Morgan concluded that the defendant “was in complete control of his behavior” and not suffering from mental illness or emotional disturbance.
Based on the evidence presented, the jury determined that the State had proven the existence of three aggravating circumstances beyond a reasonable doubt: (1) “[t]he defendant was previously convicted of one or more felonies, other than the present charge whose statutory elements involve the use of violence to the person;” (2) “[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse, beyond that necessary to produce death;” and (3) “[t]he murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or attempting to commit, or fleeing after committing a robbery.” Tenn.Code Ann. § 39-13-204(i)(2); (i)(5) and (i)(7) (1991 Repl.). In addition, the jury found that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt and, as a *525 result, sentenced the defendant to death by electrocution. The trial court entered a judgment in accordance with the jury’s verdict and the Court of Criminal Appeals affirmed. After reviewing the record and considering the errors alleged by the defendant, we affirm the judgment of the trial court and Court of Criminal Appeals.
Tennessee v. Hodges, 944 S.W.2d 346, 349-51 (Tenn.1997) (footnotes omitted).
PROCEDURAL HISTORY
Hodges was convicted of first-degree murder and sentenced to death in January 1992. The Tennessee Court of Criminal Appeals affirmed his conviction and sentence in 1995. Tennessee v. Hodges, No. 01-C-01-9212-CR00382, 1995 WL- 301443 (Tenn.Crim.App. May 18, 1995). The Tennessee Supreme Court affirmed in 1997. Hodges, 944 S.W.2d 346.
Hodges filed a petition for post-conviction relief in December 1997, and the trial court denied relief in February 1999. The Tennessee Court of Criminal Appeals affirmed that decision in 2000. Hodges v. Tennessee, No. M1999-00516-CCA-R3PD, 2000 WL 1562865 (Tenn.Crim.App. Oct. 20, 2000). The Tennessee Supreme Court denied an application for permission to appeal in March 2001.
Hodges filed a petition to proceed in forma pauperis in federal district court in May 2001, a provisional petition for a writ of habeas corpus in July 2001, and an amended petition in March 2002. Hodges raised 32 claims and subclaims in his amended habeas petition. The district court granted some of Hodges’s discovery requests, denied others, and denied Hodges’s request for an evidentiary hearing. In March 2008, the district court denied Hodges’s habeas petition. Hodges applied for a Certificate of Appealability (“COA”), and the. district court granted a COA as to all claims.
STANDARD OF REVIEW
This court reviews de novo a district court’s legal conclusions and mixed questions of law and fact, and reviews its factual findings for clear error. Lucas v. O’Dea, 179 F.3d 412, 416 (6th Cir.1999). Under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), a district court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the “contrary to” clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146- L.Ed.2d 389 (2000). Under the'- “unreasonable application” clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court’s decisions but unreasonably applies that principle to the facts of the petitioner’s case. Id. To obtain habeas relief, “a state prisoner must show that the state court’s ruling on the claim being presented in federal, court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011).
*526 To analyze whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, courts look only to the holdings of the Supreme Court’s decisions as of the time of the- relevant state court decision. Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Courts consider lower court decisions to the extent they shed light on the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established. Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir.2003). Finally, the state court’s factual findings are presumed correct unless rebutted by the habeas petitioner by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); McAdoo 1>. Elo, 365 F.3d 487, 493-94 (6th Cir.2004).
ANALYSIS
Before this court, Hodges raises four issues: (1) whether the state courts reasonably applied federal law in determining that certain restrictions imposed on voir dire by the trial court did not interfere with Hodges’s constitutional right to a fair and impartial trial; (2) whether the district court properly denied Hodges’s requests for discovery, an evidentiary hearing, and habeas relief on a claim of juror misconduct; (3) whether the state courts reasonably applied federal law in determining that Hodges’s trial counsel were not ineffective for advising Hodges to plead guilty to murder and aggravated robbery; and (4) whether the district court properly denied an evidentiary hearing and habeas relief' on Hodges’s claims of incompetency at trial and ineffective assistance of counsel at sentencing. Hodges failed to - brief the remaining claims for which the district court granted a COA and, therefore, has waived them. See Fed. R.App. P. 28(a)(9)(A); Landrum v. Mitchell, 625 F.3d 905, 913 (6th Cir.2010).
I. Restrictions on Voir Dire
Hodges alleges that he was denied his right to a fair and impartial jury when the trial court refused to allow his attorneys to ask prospective jurors whether they could consider a life sentence for a defendant with a prior conviction for murder. Specifically, defense counsel repeatedly attempted to ask the following question or a variation thereof: “Could you impose a life sentence for somebody who has been convicted of first degree murder twice?” The trial court repeatedly sustained the prosecution’s objections to the question.
Hodges raised this claim on direct appeal. The Tennessee Court of Criminal Appeals rejected it, finding that each juror was asked and allowed to answer questions about whether he could follow the law, consider a life sentence, and weigh the aggravating and mitigating circumstances. Hodges, 1995 WL 301443, at *8. The court also found that a prospective juror could not answer the question “without knowing more about the facts surrounding the case,” and that the question impermissibly sought “to obtain a pledge from the prospective juror.” Id. The district court found that the state court’s decision was not an unreasonable application of federal law, agreeing with the state appellate court that Hodges’s questions improperly sought to commit the jurors to an opinion before hearing all of the evidence.
The Sixth Amendment guarantees a criminal defendant a trial by an impartial jury. Morgan v. Illinois, 504 U.S. 719, 726-27, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). An adequate voir dire to identify unqualified jurors is integral to that right. Id. at 729, 112 S.Ct. 2222; Dennis v. Mitchell, 354 F.3d 511, 523-24 (6th Cir.2003). A state court’s refusal to pose “constitutionally compelled” questions merits habeas relief. Mu’Min v. Virginia, *527 500 U.S. 415, 425-26, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). Questions are constitutionally compelled only if “the trial court’s failure to ask these questions ... renderfs] the defendant’s trial fundamentally unfair.” Id.
Hodges relies primarily on Morgan in support of his position. In Morgan, the trial court did not permit defense counsel to ask prospective jurors the following question: “If you found [the defendant] guilty, would you automatically vote to impose the death penalty no matter what the facts are?” Morgan, 504 U.S. at 723, 112 S.Ct. 2222. The Supreme Court held that general questions about following the law were not enough and that it was error to exclude a more specific question tailored to identify jurors “who would ahvays impose death following conviction [of a capital offense].” Id. at 733, 735, 112 S.Ct. 2222 (emphasis in original).
The Tennessee Court of Criminal Appeals’ determination that the trial court’s restrictions on voir dire were permissible was neither contrary to nor an unreasonable application of federal law. The trial court allowed defense counsel to ask the Morgan question, ie., whether there was an aggravating circumstance that would cause her automatically to impose the death penalty. In fact, the trial court went beyond that and also allowed defense counsel to ask prospective jurors whether they could impose a life sentence on a defendant who had a prior conviction for a violent felony.[1] Only when defense counsel sought to get even more specific— asking whether a prospective juror could impose a life sentence on a defendant who had a prior first-degree murder conviction — did the trial court restrict questioning.
This circuit has held that voir dire questions about how a potential juror would vote if given specific examples of aggravating or mitigating evidence are not constitutionally compelled under Morgan. In Dennis, 354 F.3d at 523, the petitioner alleged that the trial court violated his’ constitutional rights by refusing to permit him to ask prospective jurors about specific mitigating factors, including age, lack of prior criminal history, and environment. We held that the Ohio Supreme Court’s conclusion that the trial court allowed adequate. questioning was “not an unreasonable determination of the facts in light of the record” and was not “contrary to United States Supreme Court precedent.” Id. at 525. We noted that the trial court had allowed the petitioner’s counsel to ask prospective jurors about mitigating factors in general: whether or not they could consider mitigating factors and return a life sentence; whether they could follow the law; and whether any of the jury panel had strong feelings about psychological evidence concerning upbringing, discipline, and lack of discipline. Id. at 524-26.
*528 Similarly, in Bedford v. Collins, 567 F.3d 225 (6th Cir.2009), we rejected the petitioner’s claim that the trial court improperly limited the scope of voir dire by prohibiting counsel from asking questions that sought to elicit prospective jurors’ views on the petitioner’s specific case. We noted that the trial court “drew the line at questions that sought to elicit the jurors’ views on [the petitioner’s] specific case — but many judges understandably (and properly ) would do the same thing to prevent the lawyers from previewing their case through voir dire.” Id. at 232 (emphasis added). Ultimately we concluded that the restrictions on voir dire “did not render the process fundamentally unfair. [The restrictions] reflect instead a reasonable effort to enable adequate exploration of juror biases (on the one hand) while preventing counsel from extracting commitments from individual jurors as to the way they would vote (on the other).” Id. (citing Dennis, 354 F.3d at 523-25).
Other circuits agree that Morgan does not compel a trial court to allow questions about how a potential juror would vote if given specific examples of aggravating or mitigating evidence. See Richmond v. Polk, 375 F.3d 309 (4th Cir.2004); United States v. McVeigh, 153 F.3d 1166, 1207 (10th Cir.1998) (“When a defendant seeks to ask a juror to speculate or precommit on how that juror might vote based on any particular facts, the question strays beyond the purpose and protection of Morgan.”). In Richmond, the Fourth Circuit addressed a claim functionally identical to the one presented here by Hodges. There, the defendant sought to ask potential jurors “if ... knowing that [the defendant] had a previous first-degree murder conviction, they could still consider mitigating circumstances ... in determining what their ultimate recommendation as to life or death is going to be.” Richmond, 375 F.3d at 316. The trial court denied counsel’s request to ask the question “on the basis that it was a ‘stakeout’ question aimed at determining what prospective jurors would do if presented with a certain state of evidence.” Id. The North Carolina Supreme Court agreed and affirmed. Id. at 329-30. The Fourth Circuit held that the North Carolina Supreme Court’s decision “was neither contrary to nor an unreasonable application of Morgan.” Id. at 330 (internal quotation marks omitted). It reasoned:
Morgan does not require that a capital defendant be allowed to determine at voir dire what a prospective juror’s sentencing decision will be if presented with a specific state of evidence or circumstances. Rather, Morgan requires that a capital defendant be afforded an adequate opportunity at voir dire to identify prospective jurors who, even prior to the State’s case in chief, have predetermined to impose the death penalty.
Id. (internal quotation marks and formatting omitted).
We agree with the Fourth Circuit’s reasoning in Richmond, and we hereby reaffirm our own holdings in Dennis and Bedford. Trial courts have “a great deal” of discretion in conducting voir dire. Morgan, 504 U.S. at 729, 112 S.Ct. 2222. Morgan simply does not require a trial court to permit defense counsel to ask prospective jurors how they would vote assuming the existence of particular mitigating or aggravating circumstances, which is essentially what defense counsel sought to do here. Morgan allows for the identification and exclusion of jurors who are biased for or against the death penalty before being presented with any evidence and would always vote in accordance with their biases without regard to the particular facts of the particular case. Id. at 733, 112 S.Ct. 2222 (“Were voir dire not available to lay bare the foundation of petitioner’s chai *529 lenge for cause against those prospective jurors who would always impose death following conviction, his right not to be tried by .such jurors would be rendered ... nugatory.”) (emphasis in original). When defense counsel asks questions about the specific aggravating and/or mitigating factors actually at issue in a case, defense counsel is no longer attempting to identify members of the venire who would always vote for the death penalty; rather, defense counsel is attempting to preview how prospective jurors will vote given the specific facts of the individual case, and Morgan does not require a trial court to allow such previews.
Here, defense counsel was permitted to ask the Morgan question and was even permitted to go beyond that and ask questions such as whether a juror could impose a life sentence on a defendant with previous violent-felony convictions. That was easily sufficient to comply with Morgan’s requirement that a capital defendant be allowed to identify prospective jurors who would “always” vote for death. See id. The trial court excluded only questions concerning specific aggravating factors actually at issue in the case (namely, a previous conviction for first-degree murder). Accordingly, the decision of the Tennessee Court of Criminal Appeals affirming the trial court’s restrictions on voir dire was neither contrary to nor an unreasonable application of federal law, and Hodges is not entitled to habeas relief on this claim.
II. Juror Misconduct
Hodges claims that his death sentence violates his Sixth, Eighth, and Fourteenth Amendment rights because juror Leroy Thompson engaged in misconduct by allegedly misinforming the trial court that he would be able to sit on the jury but then voting for the death penalty only because he was in pain due to arthritis and wanted to end deliberations. Hodges included Thompson’s alleged misconduct as a ground for his request for an evidentiary hearing. Hodges concedes that he never raised this matter in the state courts and that it is therefore procedurally defaulted, but he contends that he can establish cause and prejudice to excuse the procedural default.
Whether a petitioner’s federal habeas claim is barred by procedural default is a question that we review de novo.[2] Abela v. Martin, 380 F.3d 915, 922 (6th Cir.2004). “[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State’s established appellate review process.” O’Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). When a petitioner has faded to present the grounds to the state courts and no state remedy remains available, his grounds are procedurally defaulted. Id. at 847-48, 119 S.Ct. 1728. “[T]he exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review.” Hicks v. Straub, 377 F.3d 538, 552-53 (6th Cir.2004) (internal quotation marks omitted). The petitioner will not be allowed to present claims never before *530 presented in the state courts unless he can show cause to excuse -his failure to present the claims and actual prejudice to his defense at trial or on appeal. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The only exception is if review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).
Hodges concedes that he never presented this particular claim to the state courts. He did challenge Thompson for cause on the basis that Thompson was incompetent and unable to understand the proceedings, but he never “presente[ed] the same claim under the same theory to the state courts” that he presents here. See Hicks, 377 F.3d at 553.
Hodges no longer has any state court remedies to exhaust. Under Tennessee’s post-conviction law, a prisoner challenging a conviction may file only one petition attacking a single judgment. TenmCode Ann. § 40-30-102(c). A prisoner may file a motion to reopen his first post-conviction petition only if his claim stems from a newly established constitutional right that applies retroactively, relies on scientific evidence that he is actually innocent, or involves a sentence enhanced because of a previous conviction that has been declared invalid. Fletcher v. Tennessee, 951 S.W.2d 378, 380-81 (Tenn.1997) (citing Tenn.Code Ann. § 40-30-217(a) (1996 Supp.)). Hodges’s juror misconduct claim does not fall within any of these exceptions. Because he failed to present the claim to the state courts and no state court remedies remain available, the claim is procedurally defaulted. See O’Sullivan, 526 U.S. at 848, 119 S.Ct. 1728.
At the district court, Hodges argued that various causes could excuse his procedural default, including ineffective assistance of appellate counsel, ineffective assistance of post-conviction counsel, reliance on Thompson’s responses in voir dire, and Hodges’s inability to locate Thompson before the post-conviction evidentiary hearing. Ineffective assistancé of counsel can constitute cause for a procedural default. See Carrier, 477 U.S. at 492, 106 S.Ct. 2639. However, “an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.” Edwards v. Carpenter, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). In post-conviction proceedings, Hodges raised a claim of ineffective assistance of appellate counsel regarding Thompson’s competence. He did not claim that appellate counsel were ineffective for failing to raise the claim that Thompson engaged in misconduct. Accordingly, Hodges cannot rely on ineffective assistance of counsel to establish cause to excuse his procedural default.
Nor can Hodges rely on ineffective assistance of post-conviction counsel to establish cause to excuse his default, even if this holding is not so clear-cut as it once would have been. Historically, the federal courts have held that there is no constitutional right to an attorney in post-conviction proceedings, and that ineffective assistance of post-conviction counsel therefore cannot establish cause for procedural default. See Carpenter, 529 U.S. at 450-53, 120 S.Ct. 1587; Coleman, 501 U.S. at 752, 111 S.Ct. 2546; Landrum, 625 F.3d at 919. But the Supreme Court recently held in Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that there is a “narrow exception” to Coleman: “Inadequate assistance of counsel at initial review collateral proceedings may establish cause *531 for a procedural default of a claim of ineffective assistance at trial.” Id. at 1315 (emphasis added). This “equitable” — as opposed to constitutional — exception is premised on Coleman itself, a case in which the Court declined to address the situation in which “state collateral review is the first place a prisoner can present a challenge to his conviction.” Coleman, 501 U.S. at 755, 111 S.Ct. 2546. The Martinez Court held that in such situations ineffective assistance of post-conviction counsel may be raised as cause to excuse procedural default because “the collateral proceeding is in many ways the equivalent of a prisoner’s direct appeal as to the ineffective assistance claim.” Martinez, 132 S.Ct. at 1317.
The Court in Martinez purported to craft a narrow exception[3] to Coleman. We will assume that the Supreme Court meant exactly what it wrote: “Coleman held that an attorney’s negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.” Id. at 1316 (emphasis added). The Supreme Court further insisted:
The rule of Coleman governs in all but ■ the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State’s appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons. In addition, the limited nature of the qualification to Coleman adopted here reflects ,the importance of the right to the effective assistance of trial counsel and Arizona’s decision to bar defendants from raising ineffective-assistance claims on direct appeal. Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal.
Id. (internal citations omitted; emphases added).
We will address Hodges’s claims of ineffective assistance of trial counsel in a different section, but here he claims ineffective assistance of post-conviction counsel as cause to excuse default of his claim of ineffective assistance of appellate counsel for failure to raise the juror misconduct issue on direct appeal. Under Martinez’s unambiguous holding our previous understanding of Coleman in this regard is still the law — ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel. See, e.g., Landrum, 625 F.3d at 919. Moreover, 28 U.S.C. § 2254(i) bars a claim of ineffective assistance of post-conviction counsel as a separate ground for relief, see Martinez, 132 S.Ct. at 1320, and Hodges has not presented any evidence to justify review of his claim in order to prevent a fundamental miscarriage of justice. See Carrier, 477 U.S. at 495-96, 106 S.Ct. 2639.
Additionally, Hodges cannot rely on statements made by Thompson at voir dire or difficulties in locating Thompson during state post-conviction proceedings to *532 establish cause. Thompson discussed his pain-causing arthritis at voir dire on January 27, 1992. The -verdict form is dated January 30, 1992. Hodges filed his petition for state post-conviction relief on December 11, 1997. He first attempted to locate Thompson in or around June 1998. Hodges gives no explanation whatsoever as to why nearly six-and-a-half years elapsed between his conviction and his first attempt to locate Thompson. Moreover, Hodges gives no explanation as to why or how he was able to locate Thompson for the federal habeas proceeding but not for the state post-conviction proceeding.
“[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel’s efforts to comply with the State’s procedural rule.” Carrier, 477 U.S. at 479, 106 S.Ct. 2639. For nearly six-and-a-half years, Hodges was aware that Thompson had arthritis and may have been in pain during jury deliberations but failed to seek him out. The fact that Hodges did not even attempt to locate Thompson until it was nearly too late, and then could not find him in time to present his testimony to the state court, is not an objective factor external to the defense sufficient to establish cause to excuse procedural default.
Finally, Hodges has not presented any evidence that review of this claim is necessary in order to prevent a fundamental miscarriage of justice. See id. at 495-96, 106 S.Ct. 2639. This exception has been applied only when a habeas petitioner has demonstrated that he is actually innocent. See Carter v. Mitchell, 443 F.3d 517, 538 (6th Cir.2006) (citing Carrier, 477 U.S. at 496, 106 S.Ct. 2639). Hodges has not presented new evidence of his innocence nor has he even argued that he is actually innocent.
Accordingly, Hodges is unable to establish the cause necessary tb excuse his procedural default of this claim. It was therefore appropriate for the district court to deny both an evidentiary hearing and habeas relief on this claim because the claim is barred.
III. Ineffective Assistance of Counsel at Plea Phase
Hodges argues that his counsel rendered ineffective assistance by advising him to plead guilty; that because of then-deficient performance, his guilty plea was neither knowing, voluntary, nor intelligent; and that he was prejudiced by his counsel’s performance. Hodges claims that his lawyers mistakenly believed that his pleading guilty would prohibit the state from introducing any evidence relating to the facts of the murder; that his lawyers forgot that if he pled guilty to the aggravated robbery charge, Hodges would immediately become death eligible; and that he would not have pled guilty if his lawyers had given him accurate information.
Hodges failed to appeal the plea-invalidity claim to the Tennessee Court of Criminal Appeals, and referred to it only in the final page of his brief without citing to the record or any legal authority. The Tennessee Court of Criminal Appeals considered the issue waived and declined to address it, relying on Tenn.Crim.App. R. 10(b) and Tenn.R.App. P. 27(a)(7). See Hodges, 2000 WL 1562865, at *32. To the extent that it is a separate claim, the plea-invalidity claim is procedurally defaulted. See Middlebrooks v. Bell, 619 F.3d 526, 535-36 (6th Cir.2010). Hodges cannot rely on ineffective assistance of post-conviction counsel to excuse the default; neither has he presented any evidence to justify review of his claim in order to prevent a *533 fundamental ■ miscarriage of justice. See Carrier, 477 U.S. at 495-96,106 S.Ct. 2639. Accordingly, the plea-invalidity claim is barred, and this court mil review only the ineffective assistance of counsel claim.
Hodges raised the ineffective assistance claim in his state post-conviction petition. The trial court held an evidentiary hearing and took testimony from Hodges’s trial counsel. Hodges v. Tennessee, No. M1999-00516-CCA-R3-PD, 2000 WL 1562865, at *18 (Tenn.Crim.App. Oct. 20, 2000). The Court of Criminal Appeals summarized the evidence presented as follows:
At the post-conviction hearing, Dawson [defense counsel at trial] testified that the decision' to enter' a guilty plea was made the weekend prior to trial when it was" determined that “there was no way we were going to convince anybody that Mr. Hodges didn’t kill the victim in this matter.” He explained that, at that time, the defense team believed that by entering a plea during the guilt phase of the trial, they would gain credibility with the jury for the sentencing phase. The defense team also hoped to surprise the State by entering the plea. In essence, the defense team intended to disrupt the bifurcated nature of the trial, thereby precluding the State from introducing evidence during the penalty phase which the State had planned to introduce at the guilt phase. Notwithstanding this reasoning, Dawson admitted that, although the proof was overwhelming, in hindsight, they should have proceeded to trial so that they could have begun introduction of their mitigation theories. Michael Terry [defense counsel at trial] corroborated Dawson’s testimony regarding the appellant’s guilty plea. He explained that the plea was supposed to be “a demonstration of remorse for the jury.” However, he agrees that the decision was a mistake and that they should have at a least “pitched a fight.” [Hodges] did not testify at the post-conviction hearing.
Id. The trial court held that counsel made an informed tactical decision to advise Hodges to plead guilty. Id.
The Tennessee Court of Criminal Appeals affirmed that decision. It cited Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), for the proposition that the two-prong standard from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to ineffective assistance of counsel claims arising out of guilty plea proceedings. Hodges, 2000 WL 1562865, at *19-20. The court concluded that the advice to plead guilty,was not “outside the range of competence demanded of attorneys in criminal cases.” Id. at *20. The court noted the overwhelming evidence of guilt, the reasonable hope of obtaining leniency, the reasonable belief that the jury would view the guilty plea as an expression of remorse, and the elimination of the presentation to the jury of all of the evidence available of Hodges’s guilt. Id. at *19.
The district court held that the state court’s conclusion that Hodges’s counsel made a strategic decision to advise him to plead guilty was not unreasonable. The court noted that Hodges’s counsel had done substantial work on the case before advising him to plead guilty; that counsel were experienced, aware of the state’s proof and the elements of the offenses charged; had the aid of three experts; and were impaired by Hodges’s public statements admitting to several murders. The district court also found that Hodges did not establish prejudice because Hodges did not testify at his post-conviction hearing and thus did not say that he would not have pled guilty but for the advice of counsel.
*534 After a careful review of the record, we agree with the district court. The state court’s determination that defense counsel’s performance was not deficient was not contrary to or an unreasonable application of federal law. Moreover, even if we were to find deficient performance, Hodges has failed to show that he was prejudiced by the performance.[4]
To establish ineffective assistance of trial counsel, Hodges must show that (1) his counsel’s performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. An attorney’s performance is deficient if it is objectively unreasonable under prevailing professional norms. Id. at 688, 104 S.Ct. 2052. “[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.” Id. at 689, 104 S.Ct. 2052. The test for prejudice is whether there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. Id. at 694, 104 S.Ct. 2052. To show prejudice in the guilty-plea context, a defendant “must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and instead would have insisted on going to trial.” Hill, 474 U.S. at 59, 106 S.Ct. 366. “[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the ‘prejudice’ inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.” Id.
The Supreme Court has recently noted that “[establishing that a state court’s application of Strickland was unreasonable under § 2254(d) is all the more difficult.” Harrington v. Richter,-U.S.-, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). “The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.” Id. (internal quotation marks and citations omitted). Therefore, “[w]hen § 2254(d) applies, the question is not whether counsel’s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” Id.
A. Performance
Using the “doubly” deferential standards of § 2254(d) and Strickland, we conclude that the state court’s determination that defense counsel’s performance was not deficient was neither contrary to nor an unreasonable application of federal law. Trial counsel advised Hodges to plead guilty because of the overwhelming evidence of his guilt, to give the defense credibility, to limit the proof the prosecution could present, and to show Hodges’s remorse. '
The Supreme Court has explicitly approved using the American Bar Association (“ABA”) Guidelines on attorney performance in effect at the time of a defendant’s trial as “guides to determining what *535 is reasonable” performance by counsel. See, e.g., Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). However, “ABA Guidelines are not ‘inexorable commands’; rather, they are ‘only guides to what reasonableness means, not its definition.’ ” Post v. Bradshaw, 621 F.3d 406, 418 (6th Cir.2010) (quoting Bobby v. Van Hook, 558 U.S. 4, 130 S.Ct. 13, 17, 175 L.Ed.2d 255 (2009)) (some internal quotation marks omitted).
The ABA Guidelines in effect at the time of Hodges’s trial contemplated negotiated guilty pleas only where the defendant is assured of a sentence less than death. ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (“ABA Guidelines”), § 11.6.1 (1989). “If no written guarantee can be obtained that death will not be imposed following a plea of guilty, counsel should be extremely reluctant to participate in a waiver of the client’s trial rights.” Id. § 11. 6.3 cmt.
Courts also find that a defendant has little to gain from pleading guilty in a capital case, even when the evidence of guilt is overwhelming. “[P]leading guilty [in a capital case] without a guarantee that the prosecution will recommend a life sentence holds little if any benefit for the defendant.” Florida v. Nixon, 543 U.S. 175, 191 n. 6, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (citing ABA Guidelines § ■ 10.9.2 cmt. (rev.ed.2003)). The Nixon Court noted that pleading guilty “increases the likelihood that the State will introduce aggressive evidence of guilt during the sentencing phase, so that the gruesome details of the crime are fresh in the jurors’ minds as they deliberate on the sentence.” Id. Nevertheless, the Court concluded that “counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade.” Id. at 192, 125 S.Ct. 551 (internal quotation marks omitted).
This court has also recently decided a similar, but distinguishable, case. In Post, 621 F.3d at 415-18, a pre-Richter case, we addressed whether trial counsel’s advice to enter a no-contest plea and to submit the penalty phase to a three-judge panel rather than a jury was objectively reasonable under Strickland. Using de novo review, we concluded that the defendant’s weak mitigation case made the decision reasonable, noting that “[the defendant’s] counsel were between a rock and a hard place in determining the best way to spare him a death sentence, given the overwhelming evidence of his guilt, his numerous confessions, and his refusal to plead guilty.” Id. at 418. We held that although the no-contest plea resulted in the defendant’s being “sentenced by judges, not jurors, and by three , persons rather than twelve,” the strategy was professionally reasonable because the sentencing judges could have viewed the no-contest plea as a mitigating factor (although ultimately they did not). Id. at 417.
Trial counsel’s advice to - plead guilty here was questionable. Defense counsel hoped that Hodges’s pleading guilty would accomplish the following: (1) gain credibility with the jury, (2) demonstrate Hodges’s remorse, (3) limit the evidence presented to the jury, and (4) surprise the prosecution and thereby limit the effectiveness of its penalty case. The Tennessee Court of Criminal Appeals noted that although the goals of counsel were reasonable, Hodges “ultimately gained nothing by pleading guilty.” Hodges, 2000 WL 1562865, at *20. For example, despite counsel’s attempt to limit the evidence presented to the jury, a vast majority of what they - hoped to keep out was allowed in. Trina Brown testified that Hodges planned to rob and kill the next person who propositioned him, and that he discussed how to carry out the crimes. She also told the jury that Hodg *536 es bound the victim’s hands and feet and that, after she and Hodges ransacked the victim’s apartment, Hodges strangled the victim, who was begging for his life. Hodges, 944 S.W.2d at 349. Police officers testified that the victim’s belongings were found in Hodges’s possession when he was arrested, that Hodges’s fingerprints were found in the victim’s home, and that Brown was photographed using the victim’s ATM card. Id. at 350.
Defense counsel did successfully limit the prosecution’s cross-examination of Hodges; the State was permitted to ask questions only about his personal history, and not about the circumstances of the offense. Id. at 350 n. 6. However, the same result could have been achieved by putting on a reasonable doubt defense and having Hodges testify only during the sentencing hearing. This is also true of defense counsel’s goals of gaining credibility with the jury and showing remorse.
Moreover, defense attorney Dawson testified in the state post-conviction proceeding that the defense team “never sat down and did an analysis of what are the benefits of going to trial, what are the deficits and where did that lead us.” He also testified that when the defense team advised Hodges to plead guilty, he had “totally forgotten” about the third count of the indictment, aggravated robbery; a conviction on that count constituted an aggravating factor for purposes of the penalty phase.
However, trial counsel also acknowledged that the evidence of Hodges’s guilt was overwhelming. As counsel explained during the state post-cpnviction proceeding, despite their advice that he should not speak with reporters, Hodges participated in a pre-trial television series in which he gave interviews “describing himself as a serial killer.” Attorney Dawson described the difficulties that arose from representing such a client: “We had a client that was confessing to the public on eight murders. And he had written to the court; he had written to the prosecutor, a confession to the case that we had to try. It looked pretty dismal.” Trial counsel summarized the evidence against Hodges: Hodges made inculpatory statements to police, prosecutors, the trial court, and television reporters; his fingerprints were at the scene of the crime; he had items from the victim’s house with him when he was arrested; Trina Brown gave a statement implicating him; there were photos of Brown using the victim’s bank card; and Brown’s fingerprints were on the victim’s card.
The defense team talked to Hodges about the decision to plead guilty and reviewed the guilty plea form with him. Hodges thanked his attorneys for their work and never complained about their representation.
If it were our task to determine whether trial counsel’s performance was deficient because they advised Hodges to plead guilty, the decision would be a more difficult one. The ABA Guidelines at the time of the plea contemplated guilty pleas in capital cases only in exchange for a guarantee from the prosecution not to seek the death penalty. Here, no such exchange was made, and Hodges gained little — if anything — from his plea.
However, the “ABA Guidelines are not inexorable commands,” Post, 621 F.3d at 418 (internal quotation marks omitted), and our task is not to determine whether trial counsel’s performance was deficient. Rather, we must determine “whether there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” Richter, 131 S.Ct. at 788 (emphasis added). And here, as identified by the Tennessee Court of Criminal Appeals, there is a reasonable argument that coun *537 sel satisfied Strickland’s deferential standard. Although not directly on point, the considerations in this case are similar to those faced by this court in Post: “[Counsel were between a rock and a hard place in determining the best way to spare [the defendant] a death sentence, given the overwhelming evidence of his guilt, [and] his numerous confessions.” 621 F.3d at 418. And in Post, we found that counsel’s actions were reasonable under a de novo standard of review, id., which is far less stringent than the “doubly” deferential standard that we must apply here, see Richter, 131 S.Ct. at 788. Although there is some evidence that counsel here failed to appreciate fully the impact of their decision, that is not material to the issue before us: whether there is “any reasonable argument” that counsel’s recommendation to plead guilty satisfies Strickland. As the Supreme Court has stated, “[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade.” Nixon, 543 U.S. at 192, 125 S.Ct. 551.
Ultimately, the state court that addressed this issue concluded that, “[a]l-though defense counsel’s strategy for avoiding the death penalty was thwarted, the decision to pursue that particular strategy cannot be deemed incompetent.” Hodges, 2000 WL 1562865, at *20. Under the doubly deferential standard imposed by § 2254(d) and Strickland, we simply cannot say that conclusion is contrary to or involves an unreasonable application of federal law.
B. Prejudice
Even if we did find that the state court’s decision on trial counsel’s performance was unreasonable, we could not grant relief because Hodges has failed to establish prejudice. As noted above, to show prejudice in the guilty-plea context, a defendant “must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and instead would have insisted on going to trial.” Hill, 474 U.S. at 59, 106 S.Ct. 366.
Because the state courts found that trial counsel’s performance was not deficient, the state courts did not address the prejudice prong of the Strickland inquiry. We have previously held that where a state court addresses only the performance prong of the Strickland inquiry, this court will review the prejudice prong de novo. See Morales v. Mitchell, 507 F.3d 916, 935 (6th Cir.2007). Despite the Supreme Court’s holding in Richter to the contrary, the Sixth Circuit has continued to review the prejudice prong de novo where, as here, the state court reviewed only the performance prong. See Rayner v. Mills, 685 F.3d 631, 636-639 (6th Cir.2012).[5] Thus, we apply de novo review to the prejudice prong here.
*538 In Hill, 474 U.S. at 59, 106 S.Ct. 366, the Supreme Court held that in the context of a challenge to a guilty plea, to establish prejudice a defendant need only show that “there is a reasonable probability that, but for the counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” The Court went on to give two examples. First, it noted that where the alleged error involves failure to investigate or discover exculpatory information, “the determination of whether the error ‘prejudiced’ the defendant ... will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.” Id. Second, it noted that where the alleged error involves a failure to advise the defendant of possible affirmative defenses, “the resolution of the ‘prejudice’ inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.” Id. It is therefore clear that in determining whether a defendant has shown prejudice, a court must predict whether correction of the deficient performance might have enabled the defendant to succeed at trial. “[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker.” Id. at 59-60,106 S.Ct. 366.
This court has previously noted that “testimony, though self-serving, may be enough by itself to satisfy the prejudice prong.” Miller v. Straub, 299 F.3d 570, 581 (6th Cir.2002). In Miller, the defendants testified at a hearing that they entered their guilty pleas with hesitation and would not have pled guilty but for counsel’s advice. Id. The court also noted that one of the defendants presented, in the form of testimony from his trial counsel, “additional evidence that, with competent assistance, he would have pled not guilty.” Id. at 582. Trial counsel- testified that the defendant “pled guilty only reluctantly,” and the court concluded that “the fact that [trial counsel] had to prevail upon [the defendant] to plead guilty tends to corroborate [the defendant’s] testimony that he would have pled not guilty.” Id. The court concluded that the defendants’ “testimony, along with reasonable inferences from the facts and circumstances of this ease,” established prejudice under Hill. Id. at 583.
 In Hodges’s case, we cannot conclude that Hodges has established a reasonable probability that, but for counsel’s *539 advice, he would not have pled guilty. In fact, the only evidence concerning this issue appears in Hodges’s Verified Amended Petition for Post Conviction Relief filed on March 24, 1998. There, notably, Hodges did not say that had he had better advice he would not have pled guilty. Rather, his statement was:
Had trial counsel performed the above investigations and informed Petitioner of the result of those investigations, and had counsel timely communicated with Petitioner and given him the above advice, a reasonable probability exists that Petitioner would not have pleaded guilty to all counts in the indictment, but, rather, would have insisted on going to trial.
At the end of the document, Hodges’s signature appears, verifying that the “foregoing allegations of fact are true and correct to the best of [his] information and belief.” [6]
In contrast to the defendants in Miller, Hodges has never personally testified about his decision to plead guilty and whether he would have pled not guilty but for the advice of counsel. Moreover, unlike in Miller, where “reasonable inferences from the facts and circumstances” of the case suggested that the defendants would not have pled guilty but for advice of counsel, no such inferences exist here. To the contrary, any inferences that can be made make it clear that Hodges would have pled guilty regardless of what his counsel recommended. Leading up to trial, Hodges embraced his guilt. For instance, against the advice of counsel, he participated in a pre-trial television series in which he gave interviews “describing himself as a serial killer.” Hodges also implicated himself in letters to the court and prosecutor. Those simply are not the actions of a defendant hoping to avoid a guilty plea, nor do they help establish a reasonable probability that Hodges would have pled not guilty if so advised by counsel.
Furthermore, Hill instructs us to examine how competent counsel might have influenced the outcome of a hypothetical trial, see 474 U.S. at 59-60,106 S.Ct. 866, and there is virtually no chance that Hodges could have avoided convictions by proceeding to trial. As has been discussed repeatedly, the evidence against Hodges was overwhelming, and he only made the situation worse by corresponding with reporters, the court, and the prosecutor against the advice of his counsel. Similarly, we have no evidence or reason to believe that the penalty phase of trial would have proceeded differently had there first been a full guilt phase.
A self-serving statement, couched in exactly the terms of the Supreme Court’s standard, and filed as a required part of Hodges’s verified petition for post-conviction relief, cannot establish a reasonable probability that Hodges would have pled not guilty but for the advice of counsel, where all objective evidence points unequivocally to the contrary. Hodges is not entitled to relief on his claim of ineffective assistance of counsel at the plea phase.
IV. Ineffective Assistance of Counsel at Sentencing Phase & Incompetency at Trial
Hodges argues that the district court erred when it denied him an evidentiary hearing on his claims that he was incompetent at trial and that his trial counsel were ineffective at sentencing. He also argues that the district court erred when it denied his competency and ineffective assistance of counsel claims on the merits.
*540 Hodges failed to present his claim of incompetency at trial to the state courts, and he no longer has any state court remedies to exhaust. See Fletcher v. Tennessee, 951 S.W.2d 378, 380-81 (Tenn.1997) (citing Tenn.Code Ann. § 40-30-217(a) (1996 Supp.)). The claim is therefore procedurally defaulted.
Hodges argues that substantive competency claims cannot be procedurally defaulted, citing cases from the Tenth and Eleventh Circuits. See Battle v. United States, 419 F.3d 1292, 1298 (11th Cir.2005); Walker v. Gibson, 228 F.3d 1217, 1229 (10th Cir.2000); Adams v. Wainwright, 764 F.2d 1356, 1359 (11th Cir.1985). However, neither the Supreme Court nor this court has adopted such a rule, and we decline to do so here. As the Ninth Circuit noted in LaFlamme v. Hubbard, No. 97-16973, 2000 WL 757525, at *2 (9th Cir. Mar. 16, 2000), those courts that have held that substantive competency claims cannot be procedurally defaulted appear to have conflated the distinct concepts of waiver and procedural default. Although it is true that substantive competency claims cannot be waived, Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (“it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently ‘waive’ his right to have the court determine his capacity to stand trial”), they can be procedurally defaulted. We agree with the Ninth Circuit that, “unlike waiver, the procedural default rule does not rely on the petitioner’s voluntary abandonment of a known right, but only on the fact that the claim was rejected by the state court on independent and adequate state grounds.” LaFlamme, 2000 WL 757525, at *2 (internal quotation marks and formatting omitted). We hereby hold that substantive competency claims are subject to the same rules of procedural default as all other claims that may be presented on habeas. •
Hodges also cannot rely on ineffective assistance of post-conviction counsel to excuse the default. Hodges did not default an ineffective assistance of trial counsel claim; he defaulted his claim that he was not competent to stand trial. Accordingly, Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) and Trevino v. Thaler, — U.S. -, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013) are inapplicable and the Coleman rule still applies. Because Hodges has not presented any evidence to justify review of his claim in order to prevent a fundamental miscarriage of justice, see Carrier, 477 U.S. at 495-96, 106 S.Ct. 2639, the substantive competency claim is barred, and we will review the ineffective assistance claim only to the extent that it concerns failure to investigate and present additional mitigating evidence.
In his state post-conviction petition, Hodges claimed that trial counsel were ineffective for failing to investigate and present additional mitigating evidence. According to Hodges, his counsel should have obtained prison records that showed he told a doctor that he was raped as a boy and should have interviewed additional people who were familiar with his background. Hodges also asserted that trial counsel failed to investigate evidence concerning the causes, effects, and treatment of substance abuse; failed to adequately prepare him for his testimony; and failed to make effective use of experts. Hodges requested, and the trial court granted, $15,000 for mitigation investigation; but the trial court denied Hodges’s request for additional funds to hire a drug and alcohol specialist, a mitigation specialist, and a fingerprint expert. At the evidentiary hearing, the trial court heard testimony from Hodges’s trial counsel, a clinical so *541 ciologist who helped prepare Hodges’s mitigation case, the Tennessee District Public Defender’s Conference chief counsel, and a mitigation specialist retained for the post-conviction proceeding. Hodges, 2000 WL 1562865, at *4-* 12. The trial court denied Hodges’s petition.
The appellate court affirmed, finding that Hodges had not presented any evidence in post-conviction proceedings that was substantially different from the proof introduced at the penalty phase. Id. at *27. The court found that the experts presented at the penalty phase, with one exception, were in possession of the same records about Hodges used by the post-conviction mitigation specialist, and that additional evidence from further mitigation investigation would have been cumulative to the evidence obtained by trial counsel before sentencing. Id. It stated, “[g]iven the records presently before this court, we conclude that trial counsel adequately investigated the appellant’s background and presented a case in mitigation that was supported by the information introducéd.” Id. The appellate court also held that the trial court did not abuse its discretion by denying Hodges the additional funds he requested because his post-conviction ■counsel were capable of presenting the available mitigation information without expert assistance. Id. at *29.
A. Evidentiary Hearing
“This court reviews a district court’s decision whether to hold an evidentiary hearing for an abuse of discretion.” Vroman v. Brigano, 346 F.3d 598, 606 (6th Cir.2003).
Generally, 28 U.S.C. § 2254(e)(2) governs whether a district court should hold an evidentiary hearing in a habeas proceeding. Section 2254(e)(2) states that, with a few exceptions, “[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim.” Hodges does not argue that one of the exceptions applies; instead, he argues that he did not fail to develop the factual basis of his claim and is therefore entitled to an evidentiary hearing-.
We need not decide whether Hodges developed the factual basis of his claim in state court because the Supreme Court’s decision in Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), prohibits us from considering new evidence in this case. The Court held that “review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.” Id. at 1398. It reasoned that the language of the statute.is “backward-looking” and “requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.” Id. The Court also noted that its holding did not “render[ ] §. 2254(e)(2) superfluous” because it “continues to have force where § 2254(d)(1) does not bar federal habeas relief.” Id. at 1400-01.
Hodges’s ineffective assistance claim was brought under § 2254(d)(1), and it was adjudicated on the merits by the state courts. Pinholster therefore applies. It was a reasonable exercise of the district court’s discretion to deny an evidentiary hearing on the claim, because any evidence introduced would be “irrelevant” and “have no bearing on § 2254(d)(1) review” in any event. See id. at 1400.
B. Ineffective Assistance
To prevail on his claim of ineffective assistance of counsel at sentencing, Hodges must show both that his counsel’s performance was deficient and that the *542 deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. With respect to performance, “counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Pinholster, 131 S.Ct. at 1403. An attorney’s failure to reasonably investigate the defendant’s background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel. Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, “Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.” Id. at 533, 123 S.Ct. 2527. The court must consider not only the evidence known to counsel, but also whether that evidence “would lead a reasonable attorney to investigate further.” Id. at 527, 123 S.Ct. 2527. “[I]f a habeas claim does not involve a failure to investigate but, rather, petitioner’s dissatisfaction with the degree of his attorney’s investigation, the presumption of reasonableness imposed by Strickland will be hard to overcome.” Campbell v. Coyle, 260 F.3d 531, 552 (6th Cir.2001) (internal quotation marks omitted). “[Tjhere is no prejudice when the new mitigating evidence ‘would barely have altered the sentencing profile presented’ to the decision-maker.” Sears v. Upton,- U.S. -, 130 S.Ct. 3259, 3266, 177 L.Ed.2d 1025 (2010) (quoting Strickland, 466 U.S. at 700, 104 S.Ct. 2052).
“Establishing that a state court’s application of Strickland was unreasonable under § 2254(d) is all the more difficult.” Richter, 131 S.Ct. at 788. “The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.” Id. (internal quotation marks and citations omitted). Therefore, “[w]hen § 2254(d) applies, the question is not whether counsel’s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland ’s deferential standard.” Id.
The state court record supports the conclusion that Hodges’s trial counsel reasonably investigated Hodges’s background and presented mitigating evidence. The Tennessee Supreme Court summarized the mitigation evidence presented at sentencing as follows:
In mitigation, the defendant testified and also presented the testimony of his mother, his brothers and Dr. Barry Nurcombe, a child psychiatrist. This proof showed that the defendant was the next to youngest of his mother’s five sons. His mother and father were not married. His father was actually married to another woman, but engaged in what one of the witnesses described as an “irregular union” with the defendant’s mother for eighteen years. The defendant’s father abused the defendant’s mother and was strict with the defendant’s brothers, three of whom were the children of another man. The defendant, however, was his father’s favorite and was spoiled. Financial difficulties forced the family to move about frequently, and defendant’s father supported the family only sporadically.
The defense introduced proof to show that Hodges seemed normal until he was twelve years old. At that time, he began to associate with older boys, sniff glue and gasoline, be truant from school, and run away from home. He also engaged in sexual activities with his younger brother and attempted sexual activities with a female cousin. He became involved with the juvenile authorities *543 and was confined to a juvenile facility in Chattanooga.
Through his mitigation proof, the defendant attempted to establish that a catalyst and major contributing cause of his delinquent and later criminal behavior was his rape and sexual abuse by a stranger when.he was twelve years old. According to the defendant, he accepted a stranger’s offer of a ride home when he was playing a short distance from his home on Fessler’s Lane in Nashville. Rather than driving Hodges home, the stranger drove Hodges to his home and raped him. Fearing rejection by his homophobic father and driven by guilt, the defendant told no one of this incident until he was arrested in 1990.
Dr. Nurcombe testified that, while the defendant suffered from an antisocial personality disorder, low self-esteem, and substance (marijuana) abuse, the killing was motivated by a subconscious desire for revenge for’the sexual abuse inflicted on him when he was twelve, coupled with Hodges’ fear that his family might discover that he was engaged in homosexual prostitution since Brown had told Hodge’s [sic] sister-in-law shortly before the killing that he was a homosexual prostitute. The defense also introduced testimony that Brown dominated and manipulated the defendant.
In rebuttal the State called Dr. James Kyser, a forensic psychiatrist, and Dr. Leonard Morgan, a clinical psychologist. Both had examined the defendant and concluded that he suffered from an antisocial personality disorder. They described persons with this disorder as having “no conscience,” being “self centered,” being “notoriously dishonest and untruthful,” and having “very little regard for the feelings of others and ... willing to use any means to get what they want, no matter who it hurts.” While acknowledging the complicated factors involved in antisocial personality disorders, the State’s experts discounted the singular importance of the one incident of alleged sexual abuse in causing the defendant’s actions. Dr. Morgan concluded that the defendant “was in complete control of his behavior” and not suffering from mental illness or emotional disturbance.
Hodges, 944 S.W.2d at 350-51. Because Hodges alleges that his trial counsel’s mitigation case overlooked significant aspects of his background, the mitigation testimony merits more detailed attention.
Dr. Nurcombe, head of child psychiatry at Vanderbilt Medical School, testified that he specialized in juvenile delinquency and the effects of sexual abuse, and that he had examined at least 500 children. To assess Hodges, Dr. Nurcombe reviewed his school records, legal records, mental health records, and the results of an investigation by a private investigation group concerning his family background. He also interviewed Hodges for a .total of nine hours on three occasions, and had a one-hour phone interview with him. The mental health records available to Dr. Nurcombe included five psychological tests from the age of twelve to late adolescence. He found no evidence that Hodges was insane, but he did say that Hodges was not mentally healthy. He also said that Hodges suffered from an antisocial personality disorder, low self-esteem, and substance abuse.
In addition to Dr. Nurcombe, Hodges’s counsel presented six other witnesses at sentencing: Hodges’s mother, three of his brothers, a neighbor, and Hodges himself. The testimony generally showed that Hodges had a difficult childhood in a low-income, dysfunctional family and that his behavior significantly worsened at the age *544 of twelve, around the time he claims to have been raped. However, Hodges himself admitted that his parents treated him well, and that his mother took him for mental health treatment many times.
At the state post-conviction proceeding, Hodges presented additional testimony. He presented the testimony of his trial counsel, each of whom explained that they did not sufficiently prepare for the sentencing phase of trial. He also presented the evidence of Dr. Ann Charvet, a clinical sociologist, who explained that she did not think the mitigation information she had compiled was used properly by the defense team, but was unable to suggest any specific information that Dr. Nurcombe or other witnesses failed to present" to the jury. He presented the testimony of David Keefe, chief counsel of the Tennessee District Public Defender’s Conference, who had reviewed Hodges’s counsel’s representation and concluded that it was deficient. Hodges, 2000 WL 1562865, at *10. And he "presented the evidence of mitigation specialist Julie 'Hackenmiller, who holds a masters degree in forensic psychology. She discussed mitigation themes that were not developed at trial.
Although the evidence presented at the post-conviction proceeding shows that trial counsel’s performance was not perfect, in light of the substantial and competent evidence produced at the penalty phase of Hodges’s trial, Hodges has not shown that the Tennessee state court’s decision that trial counsel’s performance was not deficient was unreasonable. The burden of proof is on Hodges, Pinholster, 131 S.Ct. at 1398, and under the “doubly deferential” standards imposed by § 2254(d) and Strickland, id. at 1403, Hodges has not carried that burden. Here, Hodges’s counsel retained a mitigation specialist and several experts. Defense counsel obtained most of Hodges’s available school, medical, and juvenile records. Dr. Nurcombe used those records and his interviews with Hodges to diagnose him, testify at length about his background, and link his homosexual-rape at age twelve and his exposure as a homosexual prostitute to his crime. The testimony of Hodges’s family members was consistent with Dr. Nurcombe’s testimony and conclusions. And in post-conviction proceedings, Hodges identified little information not considered by Dr. Nurcombe.
The circumstances of this case are similar to those considered by the Supreme Court in Bobby v. Van Hook, 558 U.S. 4, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009). There, the petitioner claimed that his counsel were ineffective because their mitigation investigation was insufficient. Id. at 18. The Supreme Court disagreed, finding that although the petitioner was tried less than three months after his indictment, trial counsel spoke with his parents, an aunt, and a family friend; consulted with two expert witnesses; contacted the Veterans Administration and sought medical records; and enlisted a mitigation specialist. Id. Trial counsel also presented evidence that the petitioner began drinking and using drugs as a child, witnessed his father abuse his mother, had violent fantasies, attempted suicide five times, suffered from borderline personality disorder, consumed drugs and alcohol on the day of the crime, and may have been motivated by a “homosexual panic.” Id. at 18-19. The Supreme Court rejected the petitioner’s argument that his counsel could have found more mitigating evidence by interviewing other members of his extended family and a psychiatrist who once treated his mother:
[Tjhere comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative, and search for it distractive from more *545 important duties.... [I]t was not unreasonable for [the petitioner’s] counsel not to identify and interview every other living family member or every therapist who once treated his parents.
Id. at 19.
Here, given the mitigation evidence Hodges’s counsel gathered from his family and Dr. Nurcombe’s review of his background, it was reasonable for counsel not to identify and interview more distant family members or review their mental health. And to the extent that Hodges argues that counsel were ineffective for relying on Dr. Nurcombe, see Pet.’s Br. at 15 (describing Nurcombe as “a Court TV pundant [sic]”), 112 (Nurcombe “fail[ed] to conduct the sort of thorough personal history that is necessary to come to an accurate diagnosis”), his argument fails because Hodges has not shown that trial counsel had good reason to believe Dr. Nurcombe was incompetent, or, for that matter, that he was incompetent.[7] See Fautenberry v. Mitchell, 515 F.3d 614, 625 (6th Cir.2008) (“[The petitioner] has not shown that counsel had good reason to believe that [the expert] was incompetent, and we conclude that it was objectively reasonable for counsel to rely upon the doctor’s opinions and conclusions.” (internal quotation marks omitted)); Lundgren v. Mitchell, 440 F.3d 754, 772 (6th Cir.2006) (counsel’s reliance on mental health experts was reasonable because petitioner presented no evidence that they were not competent); Clark v. Mitchell, 425 F.3d 270, 286 (6th Cir.2005) (counsel reasonably relied on the opinions of a psychologist and psychiatrist in not seeking additional testing).
Where, as here, trial counsel puts on a reasonable mitigation case and presents nearly all of the same information as presented by the petitioner’s post-conviction experts, we cannot find deficient performance. And we certainly cannot find that the state court’s decision that trial counsels’ performance was not deficient was unreasonable. “As Strickland made clear, our role on habeas review is not to nitpick gratuitously counsel’s performance. After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation.” Smith v. Mitchell, 348 F.3d 177, 206 (6th Cir.2003) (citing Strickland, 466 U.S. at 684, 104 S.Ct. 2052).
Because we find that trial counsel’s performance was not deficient, we need not address whether Hodges was prejudiced by that performance. Hodges is not entitled to habeas relief on this claim.
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s denial of Hodges’s petition for habeas relief.

. In one instance, defense counsel asked if a prospective juror could consider mitigating evidence for a defendant who had been previously convicted of a violent felony (as opposed to a previous conviction for first-degree murder). The juror answered "[pjrobably not” and was subsequently excluded for cause. Hodges claims the exclusion of this juror "proves the fundamental unfairness of the trial court’s restrictions [on voir dire].” Pet.'s Br. at 69. We disagree for at least two reasons. First, the question posed to that juror contemplated a conviction for any violent felony, which is different from a question asking about a specific violent felony actually at issue in the trial (e.g., first-degree murder). Second, the trial court's exclusion of that juror on the basis of her answer to that specific question does nothing whatsoever to suggest that the trial court was constitutionally compelled to allow the excluded questions, which focused on first-degree murder, not violent felonies in general. Accordingly, despite Hodges’s vehement arguments to the contrary, the exclusion of that juror does not provide compelling support for his position.

. We recognize that the district court did not discuss whether this claim was procedurally defaulted because it found that Leroy Thompson did not serve on the jury. That finding was clearly erroneous; Leroy Thompson's name appears on the verdict form. The district court’s failure to discuss procedural default of this claim does not prohibit this court from considering it, cf. Elzy v. United States, 205 F.3d 882, 886 (6th Cir.2000) ("we nonetheless may raise [the issue of procedural default] sua sponte ”), particularly in light of the fact that the State argued that the claim was procedurally defaulted in both the district court and in this court.

. We are reminded of one jurist's statement, made in a different context, that "[ejxceptions to categorical rules, once created, are difficult to cabin; the logic of the new rule, like water, finds its own level, and it's hard to keep it from covering far more than anticipated.” United States v. Alvarez, 638 F.3d 666, 667 (9th Cir.2011) (Kozinsky, C.J., concurring).

. We note that two recent Supreme Court cases — Lafler v. Cooper, - U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), and Missouri v. Frye, -U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) — recognizing a Sixth Amendment right to effective representation during plea-deal negotiations are not implicated here. The record does not reflect that Hodges was offered any plea deal, so the existing legal standard under Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and its progeny remains the law.

. In Richter, 131 S.Ct. at 784, the Supreme Court stated,
Where a state court’s decision is unaccompanied by an explanation, the habeas petitioner’s burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim,” not a component of one, has been adjudicated.
(emphasis added). Rayner places undue emphasis on the "unaccompanied by an explanation” language of the first sentence's opening clause, but disregards entirely the second sentence, which requires that the habeas petitioner’s burden of showing that there was no reasonable basis for the state court's denial of relief applies "whether or not the state court reveals which of the elements of a multipart claim it found insufficient....” As the Court went on to say, "[w]hen a federal claim has been presented to a state court and the state *538 court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.” Richter at 784-85. Whether the decision is accompanied by an explanation or not accompanied by an explanation, whether any provided explanation states which elements it found insufficient or not, the statute provides an unequivocal rule: “§ 2254(d) applies when a ‘claim, ' not a component of one, has been adjudicated."
Rayner also leaves this court with the following peculiar rule: if the state court fails to given an explanation as to either prong, then full AEDPA deference is due to both prongs; but if the state court gives an explanation of one prong, then we do not give deference to the other. In other words, the more information the state court provides, the less deference we grant it. This is contrary not only to the language of the statute, which speaks of “claims” not components of claims, but also contrary to the spirit of § 2254(d), which is designed to give more deference to a state court judgment on the merits.
Moreover, as a matter of logic, a finding that counsel's performance was not deficient implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant. Indeed, it would be nonsensical to argue that a performance deemed to be constitutionally sufficient nevertheless prejudiced the defendant. It must be assumed that a state court’s decision that performance was not deficient includes a decision that the performance was not prejudicial.

. We note' that the verification oath and signature is required of all post-conviction petitions filed in Tennessee. See Tenn.Code Ann. § 40-30-204(e) (1997).

. Indeed, we believe that the record shows that Dr. Nurcombe’s theory and testimony were competent.