OPINION
McKEAGUE, Circuit Judge.
Sentoryia Young appeals the district court’s denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. A jury convicted Young of second-degree murder and two counts of aggravated assault following an altercation outside a Nashville hotel, and he was sentenced to life in prison without parole. After an unsuccessful direct appeal in state court, Young raised various claims in an initial state postconviction proceeding that were all denied. Young then appealed, but his postconviction appellate counsel raised only some of the rejected claims. The claims not raised were forfeited.
With his state law remedies exhausted, Young filed a 25-claim petition for a writ of habeas corpus in federal court. The district court found that all of Young’s claims were either procedurally defaulted or meritless. It granted Young a certificate of appeala-bility, however, on the question of whether Young’s postconviction appellate counsel was so ineffective as to have abandoned him. R. 79, Order at 2, PID 2991. Abandonment would constitute cause to excuse the default of eight claims raised by Young’s initial postconviction counsel, but not by his appellate counsel. See Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012). We also granted Young’s motion to expand the certificate of appealability to include the question of whether the district court erred in denying *257 Young’s request to depose his postconviction appellate counsel. See App. R. 11, Order at 7. For the following reasons, we conclude that neither claim merits relief, and we consequently affirm.
I
In 2002, Sentoryia Young and several friends returned to a Nashville hotel room with two women from a strip club who agreed to have sex with them for $250. State v. Young, No. M2005-01873-CCA-R3-CD, 2008 WL 2026108, at *1 (Tenn. Crim. App. May 12, 2008), app. denied (Tenn. Dec. 8, 2008). After they paid the women, and as three of the men were leaving the hotel in a car, one of the women noticed that her money was missing. Id. An argument broke out over the allegedly stolen cash, and someone accused one of the passengers in the car of cocking his gun. Id. According to evidence adduced at trial, upon hearing this information, Young approached the car and fired multiple shots, killing the driver and injuring the two passengers. Id. at *l-*2.
Young was subsequently charged with one count of second-degree murder and two counts of aggravated assault for his involvement in the altercation. Id. at *1; see also R. 34-1, Indictment at 8-10, PID 278-80. The state’s first attempt to convict Young ended in a mistrial after a police officer mentioned Young’s prior criminal history, despite being warned by the judge not to do so. R. 34-1, Trial Ct. Minutes at 98, PID 368. At the conclusion of Young’s second trial, a jury found Young guilty on all counts, and he was sentenced to life in prison without parole. R. 34-1, Judgments at 157-59, PID 427-29. Following his conviction, Young requested a stay of his direct appeal so that he could file a petition for a writ of error coram nobis in the trial court. Young, 2008 WL 2026108, at *2. Young sought this equitable relief based upon newly discovered evidence indicating that a chart used by the state at trial, but not admitted into evidence, might have been present in the jury room, during deliberations. R. 30, Second Amended Habe-as Pet. at 33, PID 143. The state trial court denied Young’s petition and, in a consolidated appeal, the Tennessee Court of Criminal Appeals affirmed both the denial of this petition and Young’s conviction and sentence. Young, 2008 WL 2026108, at *1. The Tennessee Supreme Court declined review. Id.
Next, Young filed a pro se petition for state postconviction relief and later filed an amended petition through appointed counsel that raised approximately twenty grounds for relief, including sixteen claims of ineffective assistance of trial and appellate counsel. R. 34-27, Amended Pet. for Post-Conviction Relief at 40-44, PID 2415-19. Each ineffective-assistance claim was one sentence long. After an evidentiary hearing that included testimony from Young’s trial attorneys, Young’s initial postconviction counsel filed a Post-Hearing Memorandum focusing on only three of the ineffective-assistance-óf-trial-counsel claims raised in the amended petition: counsel’s failure to move for a mistrial with prejudice, counsel’s incompetent use of peremptory strikes, and counsel’s failure to impeach a witness during the error coram nobis proceeding. R. 34-27, Post-Hearing Memorandum at 48-50, PID 2423-25. Little to no evidence was presented on Young’s remaining claims. The trial court denied Young’s petition. R. 34-27, Memorandum Op. & Order at 58-64, PID 2433-39.
Young was then appointed new counsel, Hershell Roger, R. 34-37, Order Substituting Counsel at 67, PID 2442, who filed a timely notice of appeal on Young’s behalf, R. 34-27, Notice of Appeal at 69, PID 2444. It is Roger’s conduct that forms the basis *258 of the appeal now before us. Young faults Koger for only re-raising four ineffective-assistance-of-counsel claims: the three that initial postconviction counsel focused on in his post-hearing memo and the additional claim that trial counsel failed to move to strike the entire venire after emotionally-charged testimony from a prospective juror. R. 34-28, Post-Conviction Appellant Br. at 13-16.
In addition to alleging that Koger abandoned claims that were “clearly meritorious,” Appellant Br. at 16, Young takes issues with other aspects of Koger’s representation .as well. For instance, Young claims that Koger never communicated with him, despite Young’s repeated efforts to contact him. See Appellant Br. at 11. Koger’s apparent silence prompted Young to contact his former trial attorney in an effort to ascertain the status of his appeal. Id. n.ll. She, in turn, attempted to contact Koger directly—and indirectly through others—apparently to no avail. R. 71-1, Decl. of Amy D. Harwell ¶¶ 19-20, PID 2754-65.
Young also points to missed deadlines and a tardy filing as further evidence of Koger’s dilatory conduct. Specifically, before filing Young’s 17-page brief, Koger filed two motions for extensions, one of which reached the court two days after Young’s brief was due. R. 71-3, Motions for Extension at 2, 4, PID 2760, 2762. The Tennessee Court of Criminal Appeals granted both motions. See, e.g., R. 71-3, Order at 6, PID 2764. After the second deadline passed, Young filed a complaint with the court, saying he was concerned because he knew his brief was past due based on “what [Koger] told [him].” R. 71-5, Formal Complaint at 2, PID 2771. Ko-ger filed a brief shortly thereafter, however, and the state court took no action on Young’s complaint. Since this brief was filed a month and a half past the deadline, it was accompanied by a motion requesting permission to file. R, 71-3, Motion to Late-File at 7-8, PID 2764-65. The state appellate court accepted -the tardy brief and proceeded to consider—and reject on the merits—each of the four issues raised therein, and the Tennessee Supreme Court denied Young leave to appeal. Young v. State, No. 2010-01762-CCA-R3-PC, 2011 WL 3630128 (Tenn. Crim. App. Aug. 18, 2011), app. denied (Tenn. Nov. 16, 2011).
Having exhausted state remedies, Young, again represented by new counsel, filed for habeas relief in federal court, raising twenty-five claims for relief. R. 30, Second Amended Pet. for a Writ of Habe-as Corpus at 40-91, PID 150-201, Eight of these claims were raised during Young’s initial state postconviction proceedings and denied on the merits, but not re-raised by Koger on state postconviction appeal. Conceding that these claims were procedurally defaulted, Young nevertheless argued that he was entitled to have a federal court review them because Koger had either been ineffective in failing to raise them, or had actually abandoned him altogether. In either case, Young contended, Koger’s behavior established the requisite cause to excuse this default.
The district court rejected Young’s arguments. First, it concluded that even if Koger had been ineffective, this would not entitle Young to relief under Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and Trevino v. Thaler, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), since the ineffectiveness of postconviction appellate counsel can never constitute cause to excuse a procedural default. R. 78, Memorandum Op. at 18-19, PID 2957-58. And second, the court held that Koger had not abandoned Young, so Young could not establish cause under Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), either. Id. at *259 19-21, 132 S.Ct. 1309, PID 2958-60. The district court issued a certificate of appeal-ability on the latter question, and we expanded the certificate to include the claim that the district court should have granted Young’s request to depose Koger. App. R. 11, Order at 4.
II
In reviewing the denial of Young’s § 2254 petition, we review the district court’s legal conclusions de novo and its factual findings for clear error. King v. Westbrooks, 847 F.3d 788, 795 (6th Cir. 2017). A finding that a habeas petitioner’s claim is barred by procedural default is reviewed de novo. See Hodges v. Colson, 727 F.3d 517, 529 (6th Cir. 2013). A district court’s decision to deny a discovery request is reviewed for an abuse of discretion. Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004).
III
We conclude that Young has failed to demonstrate that Hershell Koger, Young’s postconviction appellate counsel, abandoned him, since Koger continued to act as Young’s agent by filing a brief on his behalf. Instead, Young’s abandonment claim is actually, in essence, one for ineffective assistance of counsel. But under binding precedent, postconviction appellate counsel’s ineffective assistance cannot serve as cause to excuse a procedural default. Finally, because the record before us is sufficiently developed to support a finding that Koger did not abandon Young, we find no error in the trial court’s denial of Young’s request to depose Koger, as doing so would have been futile.
A
Before reaching the merits, we first consider the narrow circumstances under which a postconviction counsel’s actions may serve as cause to overcome a procedural default.
Habeas courts reviewing the constitutionality of state prisoners’ convictions and sentences are guided by statutory and judicially-created doctrines that seek to promote principles of finality and comity by limiting federal court review. One of these doctrines is the doctrine of procedural default, “under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.” Martinez, 566 U.S. at 9, 132 S.Ct. 1309. Generally, if a petitioner “fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default” and will not be entertained by federal courts. West v. Carpenter, 790 F.3d 693, 697 (6th Cir. 2015).
A petitioner’s procedural default on a claim may be excused—and a prisoner entitled to federal-court review—if he can demonstrate (1) cause for the default and (2) actual prejudice suffered as a result. See Maples, 565 U.S. at 280, 132 S.Ct. 912. Cause exists when “something external to the petitioner, something that cannot fairly be attributed to him, ... impeded his efforts to comply with the State’s procedural rule.” Id. (internal quotations and alterations omitted). As a general principle, counsel is an agent that a client controls, so mere “[attorney ignorance or inadvertence” is not normally considered “external” to a petitioner and thus will not excuse procedural default. See Coleman v. Thompson, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Ineffective assistance of counsel can constitute cause to excuse a procedural default, however, in some circumstances. Typically, these circumstances arise only when a petitioner has a Sixth Amendment right to an attor *260 ney, such as at trial or on direct review. In these instances, the default caused by the deficiency in counsel’s representation is imputed to the state and thus deemed external to the petitioner himself. Id. at 754, 111 S.Ct. 2546. During postconviction proceedings, however, the general rule is that ineffective assistance of counsel cannot establish cause to excuse a procedural default because there is no constitutional right to an attorney in such proceedings. Id. Instead, petitioners are forced to “bear the risk” of any attorney errors that may occur during collateral review. Id. at 753, 111 S.Ct. 2546.
In Martinez v. Ryan, the Supreme Court crafted a “narrow exception” to this general ruje that ineffective assistance of postconviction counsel cannot qualify as cause. The Martinez Court concluded that “[inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner’s default of a claim of ineffective assistance at trial.” Martinez, 566 U.S. at 9, 132 S.Ct. 1309 (emphasis added). In other words, if a state requires a petitioner to raise claims of ineffective assistance of trial counsel for the first time on collateral review, and initial postconviction counsel is ineffective in failing to do so, this can constitute cause to excuse a procedural default if the un-raised claims were substantial. See id. at 9-11, 132 S.Ct. 1309. The effect of this exception, then, is to permit a federal ha-beas court to hear ineffective-assistance-of-trial-counsel claims that were not raised in state courj; due to initial postconviction counsel’s ineffectiveness. Id. at 17, 132 S.Ct. 1309.
A year later, in Trevino v. Thaler, the Supreme Court extended Martinez to apply in situations where, although states may technically permit petitioners to bring ineffective-assistance-of-trial-counsel claims on cjirect review, as a practical matter, the state’s procedural framework makes it “highly unlikely” that a prisoner “will have a meaningful opportunity” to do so. Trevino, 133 S.Ct. at 1921.
Apart from the Martinez-Trevino line of cases, the Supreme Court has described a second scenario where counsel’s behavior during postconviction proceedings might provide the requisite cause to excuse the procedural default of a petitibner’s claims. In Maples v. Thomas, the Court held that a; petitioner had shown cause after his attorneys of record abandoned him without warning and caused him to miss the deadline to file a postconviction appeal. Maples, 565 U.S. at 289, 132 S.Ct. 912.
Maples had been convicted of murder and sentenced to death in Alabama, and had secured two attorneys from the New York law firm of Sullivan & Cromwell to represent him during state postconviction proceedings. Id. at 270, 132 S.Ct. 912. The attorneys filed an initial petition for relief on Maples’s behalf, but they left the firm to take jobs elsewhere while the petition was pending. Id. at 275, 132 S.Ct. 912. Their new employment prohibited them from continuing to represent Maples and they accordingly stopped working on his case, but they never notified Maples or the court of their departure, and no other attorney assumed representation of Maples in the interim. Id. at 275-76, 132 S.Ct. 912.
Thus, when the trial court issued an order denying his petition, Maples was never notified, causing him to miss the 42-day window to file a postconviction appeal. Id. at 276-77, 132 S.Ct. 912. When Maples learned of this much later, he secured new representation, exhausted all possible remaining state-court avenues for relief, and eventually filed a habeas petition in federal court. Id. at 277-78, 132 S.Ct. 912. The district court nevertheless found that Maples’s claims were procedurally defaulted since he had missed the filing deadline to *261 appeal them, and any claim of his postcon-viction appellate counsels’ ineffectiveness could not serve as cause to lift the procedural bar under Coleman. Id. at 279, 132 S.Ct. 912. The Eleventh Circuit affirmed this holding.
The Supreme Court reversed, however. It distinguished Coleman by drawing a line between claims of attorney error on the one hand, governed by Coleman, Martinez, and Trevino, and claims of attorney abandonment on the other. Id. at 282, 132 S.Ct. 912. Notwithstanding the Martinez-Trevino exception, while a petitioner is ordinarily bound by postconviction counsel’s negligence—“however egregious”—, a “markedly different situation” arises “ijvhen an attorney abandons his client without notice.” Id. at 281-82, 132 S.Ct. 912. In the former scenario, counsel still acts as the petitioner’s agent, just not effectively. In the latter ease, the principal-agent relationship is severed, and “a client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.” Id. at 283, 132 S.Ct. 912. Thus, when “extraordinary circumstances” exist and an attorney ceases to operate as a petitioner’s agent “in any meaningful sense of that word,” the petitioner has been abandoned, and the procedural bar to federal habeas review may be lifted.
According to the Court, Maples’s situation was indeed “extraordinary.” He “lacked the assistance of any authorized attorney” during the 42-day postconviction appeal window. Id. at 288-89, 132 S.Ct. 912. The conduct of Maples’s attorneys went beyond negligence—they had “severed their agency relationship with Maples” when they assumed new employment, which by law “disabled them from continuing to represent Maples.” Id. at 283-84, 132 S.Ct. 912 (citing Restatement (Second) of Agency § 112 (1957)). Moreover, after their departure, no other attorneys assumed representation of Maples: neither other lawyers at Sullivan & Cromwell, since none were licensed to practice law in Alabama, id. at 286, 132 S.Ct. 912, nor associated local counsel, as he explicitly declined to “deal with substantive issues in the case,” id. at 287, 132 S.Ct. 912. Compounding the problem, Maples had no reason “to suspect that he lacked counsel able and willing to represent him,” thereby closing the door on any remaining chance to ensure that his postconviction appellate brief was timely filed. Id. at 288-89, 132 S.Ct. 912.
By abandoning their duty of representation, Maples’s attorneys singlehandedly caused him to miss the deadline for filing his brief, which resulted in the procedural default of all his claims and ended any hope of having his death sentence overturned. The Court found that Maples had been “disarmed” by these “uncommon facts” and “extraordinary circumstances,” and held that his attorneys’ abandonment was cause to excuse the default, thereby permitting him to raise claims in federal court that had otherwise been forfeited when he missed the deadline to file a postconviction appeal. Id. at 280, 289, 132 S.Ct. 912.
B
With this overview in mind, we turn to Young’s first claim for relief: that he, like Maples, was abandoned by his postconviction appellate counsel. Thus, according to Young, he too should have his procedural default excused. We disagree. Unlike Maples, Young was not abandoned because there was no severance of the attorney-client relationship.
According to Young, his postconviction appellate counsel “did absolutely nothing of value during his ‘representation’ ” and *262 this amounted to “effective abandonment.” Appellant Br. at 11, 13. He highlights three problems with Roger’s representation that he' says evince abandonment: first, that counsel missed filing deadlines and ultimately filed a late brief with the court; second, that counsel failed to raise “the best and most obvious issues” in his appeal; and third, that counsel never communicated with him during the course of his representation. While each of Young’s allegations of counsel’s failings cause us to question counsel’s “effectiveness,” they do not—separately or when considered together—constitute “abandonment.”
Young’s first two allegations—that Roger missed filing deadlines and did not raise the most meritorious issues—offer little support for abandonment. First, the fact that Roger missed multiple deadlines to file Roger’s brief may indicate Roger was negligent, and thus ineffective, but does not show that he quit on Young’s case. Maples, 565 U.S. at 281, 132 S.Ct. 912 (reaffirming the general rule that “when a petitioner’s postconviction attorney misses a filing deadline [due to attorney negligence], the petitioner is bound by the oversight and cannot rely on it. to establish cause”); see also Ryder v. Sec’y Dep’t of Corrs., 521 Fed.Appx. 817, 820 (11th Cir. 2013). Roger’s requests for extensions and his motion asking the court to consider his late brief show that he continued to act on Young’s behalf—albeit in a negligent manner. See R. 71-3, Motions for Extension at 2, 4 PID 2760, 2762 (explaining that preparing for impending jury trials and hearings in other cases and attending to personal matters, “[i]n addition to working on [Young’s brief],” prevented timely filing); R. 71-3, Motion to Late File at 7, PID 2766 (admitting he had mistakenly believed Young’s brief was due later than the actual due date and citing “counsel error and oversight”).
Roger’s actions are distinguishable from those of the attorneys in Maples. There, Maples’s attorneys never requested any time extensions, failed to file a notice of appeal altogether, and never filed any brief on his behalf—all of the evidence showed that they had ceased their representation and had abandoned his case. Maples, 565 U.S. at 276-77, 132 S.Ct. 912. Furthermore, while the state court in Maples refused to reissue its order denying Maples relief, which would have restarted the clock and permitted Maples to timely file despite his attorneys’ abandonment, Maples, 565 U.S. at 277, 132 S.Ct. 912, here the Tennessee Court of Criminal Appeals permitted Roger’s tardy filing and proceeded to consider the merits of Young’s claims, see Young v. State, 2011 WL 3630128.
Young’s second argument is that, although the state appellate court heard some of his claims, it did not hear them all since Roger “abandoned] Mr. Young’s best issues for obtaining relief.” See Appellant Br. at 9. But this argument is a nonstarter since claim abandonment—while perhaps ineffective assistance—is not the same as client abandonment. See, e.g., Towery v. Ryan, 673 F.3d 933, 942 (9th Cir. 2012) (finding “no authority for the proposition that counsel’s failure to raise a colorable habeas claim ... severs the attorney-client relationship,” and concluding on similar facts that petitioner’s counsel was, at most, “negligent in failing to raise a colorable ... claim”); Wilkins v. Stephens, 560 Fed.Appx. 299, 304 (5th Cir. 2014) (“We have noted that counsel’s failure to raise all issues a petitioner would like to argue does not amount to abandonment.”). The type of abandonment contemplated by the Court in Maples occurs when a petitioner is “left without any functioning attorney of record.” Maples, 565 U.S. at 288, 132 S.Ct. 912. But here Roger continued to function as Young’s attorney by *263 filing a 17-page brief and raising four claims for relief on his behalf—including the only three claims that the initial post-conviction counsel viewed worthy of pressing.
Finally, Young asserts that counsel’s “complete lack of communication” demonstrates abandonment. He claims to never have spoken to Koger throughout his appeal, despite repeated attempts to reach him, both by contacting him directly and by asking his trial counsel to call Koger on his behalf. See, e.g., Appellant Br. at 11 & n.2. Young also lodged a complaint against Koger with the state court, claiming that “not once have I ever spoken to Mr. Ko-ger.” R. 71-5, Formal Complaint at 2, PID 2771. In that same complaint, however, Young admits that Koger “told [him]” that his brief “was due ... in mid-February.” Id. This seems to indicate at least one instance of communication between Koger and Young. See R. 71-3, Motions for Extensions at 2, PID 2760. This apparent contradiction aside, Young’s claims regarding Roger’s nonresponsiveness are indeed problematic. Koger was likely negligent in failing to respond to Young’s calls, perhaps grossly so. But this lack of communication, in light of all of the facts presented, does not result in “the markedly different situation” that arises when “an attorney abandons his client.” Maples, 565 U.S. at 281, 132 S.Ct. 912.
In Maples, the attorneys’ lack of communication—the failure to inform Maples that the state trial court had denied his petition and the failure to notify him of his 42-day window to file an appeal—supported the idea that the attorneys had “severed their agency relationship with Maples.” Id. at 283, 132 S.Ct. 912. That severance occurred by law upon “the attorneys’ departure from Sullivan & Cromwell and their commencement of employment that prevented them from representing Maples,” as it created a conflict of interest that resulted in a breach of. their duty of loyalty. Id. at 284, 132 S.Ct. 912 (citing Restatement (Second), of Agency § 112 (1957)). Moreover, no other attorney assumed representation of Maples in the interim. Id. at 286-88, 132 S.Ct. 912. The lack of communication was a result of the severance, not a cause; no one communicated with Maples because no one was representing him. Id. at 282, 132 S.Ct. 912 (concluding that Maples had been left “without any functioning attorney of record”).
Here, unlike in Maples, there was no severance of the agency relationship. Ko-ger never assumed different employment that created a conflict of interest “dis-abl[ing] him” from representing Young, id. at 270, or otherwise appeared to breach his duty of loyalty, for example, by putting his own or another’s interests ahead of Young’s. See Restatement (Second) of Agency, § 112, Comment b. Although Ko-ger may not have communicated with Young, his other actions indicate that he continued working on Young’s behalf. First, Koger filed a timely notice of appeal. R. 34-27, Notice of Appeal at 69, PID 2444. Second, he filed two motions seeking extensions for the time to file Young’s brief, which indicated that he was aware of his obligations to represent Young and was continuing to pursue relief on his behalf. R. 71-3, Motions for Extension at 2, 4, PID 2760, 2762. Lastly, Koger filed a brief—an action clearly in furtherance of Young’s interests, R. 34-28, Postconviction Appellant Br. at 3-19, PID 2510-26.
To be clear, Koger should have communicated with Young. But that evidence alone does not convince us that Koger actually abandoned Young. See Cadet v. State of Florida Dep’t of Corr., 853 F.3d 1216, 1234 (11th Cir. 2017) (recognizing that abandonment “denotes renunciation *264 or -withdrawal, or a rejection or desertion of one’s responsibilities, a walking away from the relationship”). Unlike the petitioner in Maples, Young was not “effectively deprived of legal representation.” Maples, 565 U.S. at 290, 132 S.Ct. 912 (Alito, J., concurring). Instead, Roger’s lack of communication speaks to his dilatory and ineffective behavior. See, e.g., Howard v. United States, 743 F.3d 459, 467-68 (6th Cir. 2014) (analyzing a § 2255 petitioner’s claim that counsel “failed to communicate with him” under Strickland’s ineffective assistance standard). We, like the district court, encourage Young to “submit a complaint ... to the Tennessee Board of Professional Responsibility.” R. 78, Memorandum Op. at 20, PID 2959. But “however egregious” Roger’s behavior may have been in failing to communicate during the course of his representation of Young, that representation continued nonetheless. See Maples, 565 U.S. at 282, 132 S.Ct. 912.
The dissent disagrees. It would hold that Roger’s failure to communicate was alone sufficient to establish abandonment and sever the agency relationship between Roger and Young.[1] See Dissent at 4. To support this assertion, it cites a sentence from Maples that quotes Justice Alito’s concurring opinion in Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), suggesting that extraordinary circumstances warranting equitable tolling of AEDPA’s 1-year statute of limitations may be established by “counsel’s near-total failure to communicate with petitioner.” Maples, 565 U.S. at 282, 132 S.Ct. 912 (quoting Holland, 560 U.S. at 659, 130 S.Ct. 2549 (Alito, J., concurring)).
But Maples relies on this statement only insofar as a lack of communication might show that “an attorney [ ] is not operating as [a client’s] agent in any meaningful sense of that word.” Id. Maples does not establish that a failure to communicate by itself will always be sufficient to establish abandonment.[2]
To the contrary, the facts in Maples and Holland indicate a higher bar for abandonment. In both cases, the Court credited a whole host of attorney misconduct—only one element of which was some form of deficient communication—that gave rise to *265 a severance of the agency relationship and the ultimate finding of abandonment. See Holland, 560 U.S. at 652, 130 S.Ct. 2549 (analyzing whether Holland’s behavior was “extraordinary” when he “failed to file Holland’s federal petition on time despite Holland’s many letters that repeatedly emphasized the importance of doing so,” “did not do the research necessary to find out the proper filing deadline, despite Holland’s letters that went so far as to identify the applicable legal rules,” “failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case,” and “failed to communicate with [Holland]”); Maples, 565 U.S. at 290, 132 S.Ct. 912 (Alito, J., concurring) (listing “no fewer than eight unfortunate events”—only one of which involved counsels’ “failure to notify petitioner”— that led to Maples being “effectively deprived of legal representation”). Here, despite Roger’s lack of communication, his other actions do not suggest a severance of the agency relationship.
Quite simply, the factual scenarios presented by Maples and Holland are very different from the circumstances present here. In both cases, the attorneys’ failure to file anything on the petitioners’ behalf prevented them from seeking relief from their death sentences: Holland missed the deadline to file a petition for federal habe-as relief, Holland, 560 U.S. at 638, 130 S.Ct. 2549, and Maples missed the deadline to file a notice of appeal from the state trial court’s denial of his state habeas petition, Maples, 565 U.S. at 271, 132 S.Ct. 912. But here Roger did file a brief for Young and preserved his ability to seek future relief from conviction. Furthermore, the cases Young relies on to support his abandonment theory all involve circumstances much more akin to Maples. See Thomas v. A.G. of Fla., 795 F.3d 1286, 1287 (11th Cir. 2015) (remanding the case to the district court to determine whether the conduct of Thomas’s lawyer amounted to abandonment in the context of equitable tolling, while noting that Maples presented a “distinct” question from the one before it); Downs v. McNeil, 520 F.3d 1311, 1321 (11th Cir. 2008) (equitable tolling); Mackey v. Hoffman, 682 F.3d 1247, 1248, 1252-53 (9th Cir. 2012) (finding that, on facts similar to Maples, a petitioner could pursue an abandonment theory to obtain relief under Rule 60(b)(6), but remanding to the district court to make a finding to this effect).
The Maples Court was careful to cabin its abandonment finding to the “extraordinary circumstances” and “uncommon facts” presented by that case. Maples, 565 U.S. at 280, 289, 132 S.Ct. 912. Here, the fact that Roger filed a timely notice of appeal and raised four colorable claims of relief that were considered on the merits by the Tennessee Court of Criminal Appeals sufficiently distinguishes this case from the “veritable perfect storm of misfortune,” id. at 291, 132 S.Ct. 912 (Alito, J., concurring), that befell the petitioner in Maples. “While we do not condone counsel’s behavior, we are also not at liberty to provide relief when the law simply does not provide for it. To our knowledge, no other court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf, and we will not be the first to extend Maples in this fashion.
At bottom, Young’s argument amounts to the fact that Roger’s lack of communication resulted in the abandonment of certain claims for relief, not that counsel abandoned him altogether. Two hypotheti-cals help illustrate this point. First, if Roger had not communicated with Young at all, but had raised all of the claims in Young’s initial postconviction petition, presumably Young would have no basis for an abandonment claim. Likewise, if Roger had been a model communicator, but still chose to only raise the same four claims, *266 Young could not have insisted that he had been abandoned. The ultimate decision about what claims to raise lies with counsel, see Hutchinson v. Florida, 677 F.3d 1097, 1107 (11th Cir. 2012), and the failure to raise even a colorable claim, while perhaps amounting to ineffective assistance, cannot sever the attorney-client relationship. See Towery, 673 F.3d at 942. Young’s characterization of his ineffectiveness claim as one of abandonment, is the exact type of “word game” Justice Scalia warned against in his dissent in Mwples. See Maples, 565 U.S. at 298-99, 132 S.Ct. 912 (Scalia, J., dissenting) (opining that the Court’s “opinion will serve as a template for future habeas petitioners seeking to evade Coleman’s holding that ineffectiveness of postconviction counsel will not furnish cause to excuse a procedural default,” and that “[t]he trick will be to allege, not that counsel was ineffective, but rather that counsel’s ineffectiveness demonstrates that he was not a genuinely representative agent”). Because Young has not demonstrated that his postconviction appellate counsel actually abandoned him, we reject his argument.
Lastly, we note that Young cannot establish prejudice resulting from Koger’s alleged abandonment. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that prejudice results when there is a “reasonable probability ... that, but for counsel’s unprofessional errors, [the] result of the proceeding would have been different”). In attempting to contact Koger, Young was solely concerned with making sure that an appellate brief was filed on his behalf. See, e.g., R. 71-1, Deck of Amy Harwell ¶ 19, PID 2764 (“Mr. Young contacted me concerned about whether an appellate brief had been filed”). But this concern appears to have been alleviated when the Tennessee Court of Criminal Appeals accepted Koger’s late brief and considered it on the merits. Young never manifested any desire that Koger raise certain claims.
Additionally, the claims not raised by Koger appear to lack merit in any event. Although Young contends that Koger failed to raise the “best and most obvious issues,” in his brief, this allegation is belied by the record, especially when viewing it through AEDPA’s deferential lens. Instead, the record indicates that Koger may have raised the only issues for which there existed any actual evidence. While Young highlights the fact that postconviction counsel raised twenty grounds for relief, and Koger only four, this comparison is misleading. In reality, initial postconviction counsel focused on only a few claims at the evidentiary hearing. See generally R. 34-27, Transcript at 73-132, PID 2448-2507, The remaining ineffective-assistance-of-counsel claims were simply stated in single, conclusory sentences in the initial petition. See, e.g., R.34-27, Amended Pet. for Post-Conviction Relief at 41, PID 2416 (“Petitioner’s trial counsel failed to properly investigate the matter”; “Petitioner’s trial counsel failed to present all available evidence on behalf of the Petitioner at trial.”). This led the state court to focus on only five of Young’s claims and dismiss the others summarily since there was “no evidence [presented] to establish the legitimacy of any other allegations.” R. 34-27, Op. of Initial Postconviction Ct. at 64, PID 2439. Therefore, rather than “slapfing] together” a brief at the last minute, as Young alleges he did, it is plausible that Koger made a strategic decision and concluded that the four issues he chose to raise were the only ones for which there existed any likelihood of relief.[3]
*267 IV
In the alternative, Young argues that if he was not abandoned, Koger was at least ineffective in his representation and that this alone should be cause to lift the procedural bar for the eight claims he now seeks to raise. But Young was not granted a certificate of appealability on this claim, so it is not properly before us. And even if it were, it is fully foreclosed by Coleman’s general rule that ineffective assistance of postconviction counsel cannot serve as cause. See Coleman, 501 U.S. at 754, 111 S.Ct. 2546. Nor does it fall within Martinez’s exception to this rule, which permitted only initial postconviction counsel’s ineffectiveness to serve as cause in limited circumstances. See Martinez, 566 U.S. at 9,16 (concluding that its “narrow exception” “does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings’’) (emphasis added). Here, Young’s initial postconviction counsel raised all of the claims whose default he now seeks to have excused, and the state trial court heard—and rejected—them on the merits. It was his postconviction appellate counsel’s failure to re-raise certain of these claims that Young takes issue with. But, unfortunately for Young, ineffective assistance of postconviction appellate counsel simply cannot serve as cause to excuse this procedural default.
This understanding has been reaffirmed in our circuit on several occasions. See West, 790 F.3d at 698 (reiterating the notion that “the Martinez-Trevino exception does not extend to attorney error at post-conviction appellate proceedings because those proceedings are not the ‘first occasion’ at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim”); Middlebrooks v. Carpenter, 843 F.3d 1127, 1136 (6th Cir. 2016) (“[T]he Martinez-Trevino exception does not apply to save procedural defaults that occur in ‘appeals from initial-review collateral proceedings.’ ” (quoting Martinez, 566 U.S. at 16, 132 S.Ct. 1309)).
Perhaps recognizing this argument is foreclosed by precedent, Young asks us to reconsider part of our decision in Hodges v. Colson “that limited Martinez/Trevino *268 to ineffective assistance of trial counsel (IATC) claims alone” and instead expand that exception to include claims of ineffective assistance of appellate counsel. See Appellant Br. at 25-26 (emphasis added). But this argument was expressly rejected by the Supreme Court in Davila v. Davis, — U.S. -, 137 S.Ct. 2058, 2062-63, 198 L.Ed.2d 603 (2017). And more importantly, in making this argument, Young makes a crucial misstep. He conflates the stage of the postconviction proceedings that can establish cause with the type of claims whose default can be excused. The Court in Martinez was clear that its exception only applied (1) during initial-review collateral proceedings and (2) to excuse default for claims of ineffective assistance of counsel at trial. Martinez, 566 U.S. at 15, 132 S.Ct. 1309. It is this second aspect of Martinez tjiat this court in Hodges and the Supreme Court in Davila refused to extend. See Hodges, 727 F.3d at 531; Davila, 137 S.Ct. at 2062-63 (holding that the Martinez exception only applies to excuse post-conviction counsel’s ineffectiveness of “a single claim—ineffective assistance of trial counsel ...” and declining to “extend that exception to allow federal courts to consider a different kind of defaulted claim— ineffective assistance of appellate counsel”) (emphasis added).
Davila does not discuss the other aspect of Martinez’s holding, which states that initial-review is the only stage of the post-conviction proceedings that can furnish cause. Since Young takes issue with his postconviction appellate counsel’s failings, not the performance of his initial-review counsel, the Martinez-Trevino exception cannot apply to excuse the default of any of his claims, be they claims of ineffectiveness of trial or appellate counsel. Accordingly, we reject Young’s alternative argument.
Y
Lastly, Young argues that the court should, at a minimum, permit him to depose Koger to further develop his Maples abandonment claim. But in making this discovery request before the district court, Young couched his request as one to “substantiate the factual predicate for his claim that he has cause to overcome [the] procedural bar due to his counsel’s ineffective assistance” under Martinez and Trevino. See R. 53 at 5, PID 2607 (emphasis added). Young never cited Maples or his theory of effective abandonment as a reason for such discovery. Therefore, the district court properly denied Young’s request because his assertion that ineffective -assistance of postconviction appellate counsel could serve as cause is firmly foreclosed by Supreme Court and Sixth Circuit precedent. See Coleman, 501 U.S. at 742-53, 111 S.Ct. 2546; West, 790 F.3d at 699. No amount of discovery was going to change that well-settled law. See R. 66, Memorandum and Order Denying Pet’s Mot. for Discovery at 1, PID 2673 (“Discovery on a claim that is procedurally defaulted and has no chance to overcome that bar to review under current standards would obviously be futile.”).
Even though Young never advanced below his need to depose Koger based on a Maples theory of relief, it was nevertheless not an abuse of discretion for the district court to deny him this opportunity. A habeas petitioner is “not entitled to discovery as a matter of ordinary course.” Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Rather, a judge, “in the exercise of his discretion,” may grant discovery “for good cause shown.” Id. (quoting Habeas Corpus Rule 6(a)). Good cause exists when a petitioner sets forth “specific allegations before the court [to] show reason to believe that [he] may, if the facts are fully developed, be *269 able to demonstrate ... entitle[ment] to relief.” Id. at 908-09, 117 S.Ct. 1793 (quoting Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)).
Here, Young argues that deposing Koger would provide him the opportunity to “solidify his [Maples] claim” and get counsel to “admit” to abandoning him. See Appellant Br. at 10; Reply Br. at 8 n.4. However, in determining that Young was not abandoned, we accepted as true all of his claims regarding counsel’s behavior. For example, we assumed that counsel did not communicate with him, that counsel missed filing deadlines and filed a tardy brief, and that counsel failed to raise claims that Young believed were the most meritorious issues on appeal. Despite these examples of subpar performance, and even if Koger were to admit to them in a deposition, there are sufficient undisputed indi-cia of continuing representation to compel the conclusion that Young was not abandoned. Since the “facts essential to our decision are not in doubt,” allowing Young to depose postconviction appellate counsel would be both wholly unnecessary and futile. See Maples, 565 U.S. at 286, 132 S.Ct. 912 (finding the record sufficient to conclude that Maples had indeed been abandoned and that a remand for fuller factual development was unnecessary).
VI
For the foregoing reasons, we affirm the district court’s denial of Young’s petition for relief.

. The dissent does not say when exactly Roger's lack of communication purportedly severed the agency relationship, leaving its theory to pose a whole host of line-drawing problems. For example, how long must an attorney’s lapse in communication with a client linger before the agency relationship can be sua sponte severed? And can it be restored? What if an attorney communicates with a client .only once, and only by letter, as it is likely Roger did here?

. The dissent also contends that, because in its view Roger’s lack of communication severed the agency relationship, Roger "lacked the authority” to file Young’s brief. Dissent at 6. This is incorrect. Not only did the agency relationship remain intact, giving Roger authority to file, but as appointed counsel for Young, he was required to continue representing Young in the absence of the state court granting him permission to withdraw. See Tennessee Supreme Court Rule 13 § 1(e)(5).
Thus, although Young sought to remove Roger, the state court chose to credit Roger’s late-filed brief rather than appoint new counsel, a decision it was entitled to make. Even when a petitioner has a Sixth Amendment right to counsel—which Young did not have at this stage in the proceedings—he does not have a right to his choice of court-appointed counsel. Daniels v. Lafler, 501 F.3d 735, 737 (6th Cir. 2007). The dissent makes this lack-of-authority argument because otherwise it makes little sense to claim that Young had been abandoned by Roger's lack of communication, but at the same time acknowledge that Roger did later file a brief on Young’s behalf, which is clearly evidence in furtherance of the agency relationship. But under the type of abandonment contemplated by Maples, an attorney-client relationship is only severed when a petitioner is left "without any functioning attorney of record.” Maples, 565 U.S. at 288, 132 S.Ct. 912.

. Apparently the dissent would be dissatisfied with Roger's representation unless he raised each of the five claims discussed by the state court. See Dissent at 9. But even “[effective *267 appellate counsel should not raise every non-frivolous argument on appeal, but rather only those arguments most likely to succeed.” Davila v. Davis, — U.S. -, 137 S.Ct. 2058, 2067-68, 198 L.Ed.2d 603 (2017) (emphasis added). Instead, the fact that Koger chose to raise only two of those claims, coupled with two additional issues not thoroughly addressed by the state court, sound more in strategy than abandonment. These decisions also belie the dissent’s accusations that Koger "failed to research the substantive issues in Young's appeal”—a statement entirely devoid of supporting record evidence, See Dissent at 5.
Furthermore, while the dissent suggests there is evidence in the record for Young's claim that his trial counsel was ineffective in failing to request removal of a sleeping juror—a claim rejected on the merits by the state court but omitted from Roger’s brief— this is simply not the case. This conclusion is buttressed by the fact that our review of the state court’s rejection would be subject to AEDPA deference, allowing us to ask only whether such a decision was “based on an unreasonable determination of the facts." See 28 U.S.C. § 2254(d). To seemingly create merit in the sleeping juror claim, the dissent cites an affidavit of a law clerk who claims that she "heard about one of the jurors sleeping through the whole trial.” But this person admitted that she "did not actually watch the trial or listen to it." R. 71-4, Guerra Aff. ¶ 3, PID 2768. And Young’s trial counsel—who was present in the courtroom—testified that she “d[idn]’t know” for how long, or during which parts of the trial, the juror was allegedly sleeping. R. 34-27, Hearing Tr, at 96, PID 2471. Presented with this vague and uncertain testimony, it is difficult to see how the state court would have reached any other outcome, let alone how we could now conclude that such an outcome was "based on an unreasonable determination of the facts.”